1  Elizabeth A. Fegan (*pro hac vice*)
2  beth@feganscott.com
   FEGAN SCOTT LLC
3  150 S. Wacker Dr., 24th Floor
4  Chicago, IL 60606
   Telephone: 312.741.1019
5  Facsimile: 312.264.0100

6
   Steve W. Berman (*pro hac vice*)
7  steve@hbsslaw.com
8  HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Second Avenue, Suite 2000
9  Seattle, WA 98101
   Telephone: (206) 623-7292
10 Facsimile: (206) 623-0594

11 *Attorneys for Plaintiffs*

12

13            **UNITED STATES DISTRICT COURT**
              **CENTRAL DISTRICT OF CALIFORNIA**
14

15 RAMTIN ZAKIKHANI, KIMBERLY
   ELZINGA, THEODORE MADDOX JR.,        Case No.:   8:20-cv-01584-SB-JDE
16 MICHAEL SUMMA, JACQUELINE
   WASHINGTON, PATTI TALLEY, ANA        **PLAINTIFFS' NOTICE OF MOTION**
17 OLACIREGUI, ELAINE PEACOCK,          **AND MOTION FOR PRELIMINARY**
   MELODY IRISH, and DONNA              **APPROVAL OF CLASS ACTION**
18 TINSLEY, individually and on behalf of  **SETTLEMENT**
19 all others similarly situated,
20                                       Judge: Hon. Stanley Blumenfeld, Jr.
                     Plaintiffs,         Date:   September 16, 2022
21                                       Time:  8:30 a.m.
22            v.                         Courtroom:  6A

23
   HYUNDAI MOTOR COMPANY,
24 HYUNDAI MOTOR AMERICA, KIA
25 CORPORATION, and KIA AMERICA,
   INC.,
26
27                   Defendants.
28

| | |
|---|---|
| BRENDA EVANS, KERICHA KENNEDY, MINDA BRIADDY, and ANTHONY VACCHIO, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>            v.<br><br>HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR AMERICA, KIA CORPORATION, and KIA AMERICA, INC.,<br><br>               Defendants. | Case No.:   8:22-cv-00300-SB-JDE |
| ADAM PLUSKOWSKI, RICKY BARBER, LUCILLE JACOB, CARLA WARD, PEPPER MILLER, and CINDY BRADY, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>            v.<br><br>HYUNDAI MOTOR AMERICA, HYUNDAI MOTOR COMPANY, KIA AMERICA, INC., and KIA CORPORATION,<br><br>               Defendants. | Case No.: 8:22-cv-00824-SB-JDE |

# Table of Contents

NOTICE OF MOTION......................................................................................vii

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND ..................................................................2

    A.   Plaintiffs' Allegations Concerning the ABS Module Defect.............2

    B.   History of the Litigation. ..................................................................2

    C.   The Settlement Consideration and Relief Provided to the
        Classes....................................................................................................5

        1.   Extended Warranty Coverage for ABS Modules ....................6

        2.   Free One-Time Inspection of ABS Modules ..........................7

        3.   Reimbursement for Past Repairs .............................................7

        4.   Reimbursement for Other Repair-Related Expenses...............8

        5.   Loss of Vehicle Due to Fire.....................................................8

        6.   Goodwill Payment for Loss of Vehicle ...................................8

        7.   Recall and ABS Module Defect Repairs .................................9

III.  ARGUMENT ..........................................................................................9

    A.   The Settlement Merits Preliminary Approval...................................9

        1.   The Settlement is the Product of Serious, Informed, Arm's-
            Length Negotiations by Experienced Counsel.........................9

        2.   The Settlement Treats All Class Members Equitably. ..........11

        3.   The Settlement Has No Obvious Deficiencies. .....................12

        4.   The Settlement Falls Within the Range of Possible
            Approval. ...............................................................................13

    B.   The Settlement Classes Should Be Certified. .................................18

        1.   The Settlement Classes Meet the Requirements of Rule
            23(a). .....................................................................................18

        2.   The Settlement Classes Meet the Requirements of Rule
            23(b)(3)..................................................................................21

    C.   The Court Should Order Dissemination of the Class Notices. .......22

        1.   The Settlement Provides the Best Method of Notice
            Practicable. ............................................................................23

        2.   The Proposed Notices Inform Class Members of their
            Rights. ...................................................................................25

3.   Notice to Federal and State Officials......................................................25

IV. CONCLUSION.........................................................................................26

# Table of Authorities

## Cases                                                                Page(s)

*Acosta v. Trans Union, LLC*,
 243 F.R.D. 377 (C.D. Cal. 2007) ............................................................ 14

*Altamirano v. Shaw Indus., Inc.*,
 No. 13-CV-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ............. 11

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997) ................................................................................ 22

*Banh v. Am. Honda Motor Co.*,
 2021 WL 3468113 (C.D. Cal. June 3, 2021) ......................................... 25

*Byrne v. Santa Barbara Hosp. Servs., Inc.*,
 2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ........................................ 10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) ............................................................ 10, 23

*Cisneros v. Airport Terminal Servs.*,
 No. 219CV02798VAPSPX, 2021 WL 3812163 (C.D. Cal. Mar. 26, 2021) ........ 12

*Clesceri v. Beach City Investigations & Protective Servs.*,
 No. CV-10-3873-JSTRZX, 2011 WL 320998 (C.D. Cal. 2011) ................... 16, 17

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) ............................................................... 15

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998)................................................................ *passim*

*Harris v. Vector Mktg. Corp.*,
 No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .............. 9-10

*Hemphill v. San Diego Ass'n of Realtors*,
 225 F.R.D. 616 (S.D. Cal. 2004) ......................................................... 10

*Herrera v. Wells Fargo Bank, N.A.*,
 No. SACV 18-332JVS (MRWx), 2021 WL 3932257 (C.D. Cal. June 8, 2021) .. 21

*In re Hyundai & Kia Fuel Econ. Litig.*,
 926 F.3d 539 (9th Cir. 2019) ...................................................... 9, 20, 22

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) .............................................................. 10

*In re Omnivision Techs.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................... 15, 17

*Keegan v. Am. Honda Motor Co.*,
 284 F.R.D. 504 (C.D. Cal. 2012) ........................................................ 22

*Kemp v. Low Cost Interlock, Inc.*,
 No. EDCV191445JGBSHKX, 2020 WL 6107070 (C.D. Cal. Oct. 9, 2020) ....... 11

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
  No. EDCV 13-00398-VAP (OPx), 2014 WL 2967475 (C.D. Cal. June 25, 2014)  12

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................ 14,  16

*Lymburner v. U.S. Fin. Funds, Inc.*,
  263 F.R.D. 534 (N.D. Cal. 2010) .......................................................... 20

*Markson v. CRST Int'l, Inc.*,
  No. 5:17-cv-01261-SB-SP, 2022 WL 1585745 (C.D. Cal. Apr. 1, 2022)....9-11, 18

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................ 15

*Mendoza v. Hyundai Motor Co., Ltd.*,
  No. 15-CV-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ................. 15

*Moreno v. Pretium Packaging, L.L.C.*,
  No. 8:19-cv-02500-SB-DFM, 2021 WL 3673845 (C.D. Cal. Aug. 6, 2021) ....... 13

*Navarrete v. Sprint United Mgmt. Co.*,
  No. 8:19-cv-00794-JLS-ADS, 2021 WL 4352903 (C.D. Cal. Mar. 2, 2021)...17, 18

*Officers for Just. v. Civil Serv. Comm'n of City & Cty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) ................................................................ 13

*Patrick v. Volkswagen Grp. of Am.*,
  No. 819CV01908, 2021 WL 3616105 (C.D. Cal. Mar. 10, 2021) ...................... 18

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ........................................................ 18, 25

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .............................................................. 19

*Shahbazian v. Fast Auto Loans, Inc.*,
  No. 218CV03076ODWKSX, 2019 WL 8955420 (C.D. Cal. June 20, 2019) ...... 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................... 9, 13

*Sullivan v. Am. Express Publ'g Corp.*,
  No. SACV 09-142-JST (ANx), 2011 WL 2600702 (C.D. Cal. June 30, 2011) ... 23

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ...................................................................... 21, 22

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ......................................................................... 18, 19

*West v. Circle K Stores, Inc.*,
  No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006)… 12

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ......................................................... 19, 20, 22

v

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:  8:20-CV-01584-SB-JDE

**Statutes**

28 U.S.C. § 1715 ................................................................ 25, 26

**Rules**

Fed. R. Civ. P. 23 ............................................................... *passim*

Fed. R. Civ. P. 26 ...................................................................... 3

Fed. R. Civ. P. 30 ................................................................... 4, 5

**Other**

A. Conte & H.B. Newberg, Newberg On Class Actions § 11:41………………. 9, 10, 14

# NOTICE OF MOTION

PLEASE TAKE NOTICE that at 8:30 a.m. on September 16, 2022, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Stanley Blumenfeld Jr., located at First Street Courthouse, 350 W. First Street, Courtroom 6C, Los Angeles, California 90012, Plaintiffs Kimberly Elzinga, Theodore Maddox, Jr., Jacqueline Washington, Patti Talley, Ana Olaciregui, Elaine Peacock, Melody Irish, Donna Tinsley, Ramtin Zakikhani, Brenda Evans, Anthony Vacchio, Minda Briaddy, Adam Pluskowski, Ricky Barber, Lucille Jacob, Carla Ward, Pepper Miller, and Cindy Brady ("Plaintiffs") will and hereby do move for an order of the Court to:

1. preliminarily approve the Settlement Agreement; certify the proposed Hyundai Settlement Class and Kia Settlement Class (together, the "Classes") under Rule 23(b)(3);

2. appoint Plaintiffs as class representatives;

3. appoint Elizabeth Fegan of Fegan Scott LLC and Steve W. Berman of Hagens Berman Sobol Shapiro LLP as Class Counsel;

4. order dissemination of the Notice to the Classes pursuant to the notice plan set forth in the Hyundai and Kia ABS Module Litigation Settlement Agreement (the "Settlement," the "Settlement Agreement," or "S.A."); and

5. set a schedule for final settlement approval.

Plaintiffs' unopposed motion is based on this notice; the accompanying Memorandum of Law; the Declarations of Elizabeth A. Fegan ("Fegan Decl.") and Steve W. Berman ("Berman Decl.") and all attachments thereto (including the Settlement Agreement); the Proposed Order Granting Preliminary Approval of the Class Action Settlement; and all other papers filed and proceedings had in this Action.

This unopposed motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 4, 2022.

| | |
|---|---|
| 1 | Dated:  August 15, 2022 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |

By: */s/ Elizabeth A. Fegan*

Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld (*pro hac vice*)
FEGAN SCOTT LLC
140 Broadway, 46th Floor
New York, NY 10005
Phone: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO
LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
E-mail: steve@hbsslaw.com
E-mail: toml@hbsslaw.com

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO
LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
(602) 840-5900
E-mail: rachelf@hbsslaw.com

Jonathan M. Jagher (*pro hac vice*)
FREED KANNER LONDON & MILLEN
LLC
923 Fayette Street
Conshohocken, PA  19428
Telephone:  (610) 234-6487
E-mail:  jjagher@fklmlaw.com

Brian M. Hogen (*pro hac vice*)
FREED KANNER LONDON & MILLEN
LLC
2201 Waukegan Road, Suite 130

viii

Bannockburn, IL 60015
Telephone: (224) 632-4500
E-mail: bhogan@fklmlaw.com

Katrina Carroll (*pro hac vice*)
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
E-mail: katrina@lcllp.com

Todd D. Carpenter
Lynch Carpenter LLP
1350 Columbia Street, Suite 603
San Diego, CA  92101
Telephone:  (619) 762-1910
E-mail: todd@lcllp.com

Jennifer A. Lenze, CA Bar # 246858
LENZE LAWYERS, PLC.
1300 Highland Avenue, Suite 207
Manhattan Beach, CA 90266
Telephone: (310) 322-8800
Facsimile: (310) 322-8811
jlenze@lenzelawyers.com

J. Barton Goplerud (*pro hac vice*)
SHINDLER, ANDERSON, GOPLERUD &
WEESE PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
E-mail: goplerud@sagwlaw.com

Rosemary M. Rivas
David Stein
Rosanne L. Mah
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

*Attorneys for Plaintiffs*

## I.  INTRODUCTION

After two years of hard-fought litigation—including multiple motions to dismiss, discovery motions, and hearings before this Court and the Magistrate Judge—as well as expert-led analysis of the risk of Anti-Lock Brake System ("ABS") module fires in the Class Vehicles[1] and two days of intensive mediation with renowned mediator Hon. Edward A. Infante (Ret.) of JAMS, Plaintiffs have achieved a settlement that provides substantial repair, reimbursement and warranty benefits to the over three million Hyundai and Kia Class Members who purchased or leased Class Vehicles manufactured or sold by Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), Kia Corporation ("KC"), and Kia America, Inc. ("KA") (collectively "Defendants").

The benefits accorded under the Settlement are in addition to, and far exceed benefits provided under the National Highway Traffic Safety Administration ("NHTSA") safety recalls that provide for various repairs to the Class Vehicles' ABS modules. In particular, the Settlement reinstates expired New Vehicle Limited Warranties ("NVLWs") as to the ABS modules and more than doubles the applicable warranty for existing NVLWs as to the ABS modules. The Settlement also provides for full reimbursement for Class Members for prior defect repair and repair-related expenses, including previously denied warranty claims, guaranteed maximum value compensation and goodwill payments in the event of a fire, and a free inspection to

---

[1] All capitalized terms shall have the same meaning as in the Settlement Agreement ("S.A."), attached to the Fegan Declaration as Ex. 1. The Class Vehicles refer to the following vehicles: Hyundai Tucson (model years ("MY") 2014-2021), Hyundai Santa Fe (MY2007, 2017-2018), Hyundai Santa Fe Sport (MY2013-2015, 2017-2018), Hyundai Santa Fe XL (MY2019), Hyundai Azera (MY2006-2011), Genesis G80 (MY2017-2020), Genesis G70 (MY2019-2021), Hyundai Genesis (MY2015-2016), Hyundai Elantra (MY2007-2010), Hyundai Elantra Touring (MY2009-2011), Hyundai Sonata (MY2006), Hyundai Entourage (MY2007-2008), Kia Sportage (MY2008-2009, 2014-2021), Kia Sorento (MY2007-2009, 2014-2015), Kia Optima (MY 2013-2015), Kia Stinger (MY2018-2021), Kia Sedona (MY2006-2010), Kia Cadenza (MY 2017-2019), and Kia K900 vehicles (MY2016-2018), which were the subject of NHTSA Recalls. S.A., ¶¶ 1.16, 1.18, 1.21.

ensure the continued safety of the repaired ABS modules. Moreover, Defendants will separately pay attorneys' fees and costs and service awards to the Class Representatives as awarded by the Court, so that these ancillary costs of the Settlement will not dilute any of the benefits available to the Classes.

As described fully below, the proposed Settlement provides substantial benefits to Class Members, while avoiding the considerable risks and costs of protracted litigation. The Settlement falls well within the range of fair, reasonable and adequate so as to support provisional certification of the Classes and the provision of notice to Class Members. Accordingly, Plaintiffs respectfully request that this Court grant their unopposed Motion for Preliminary Approval of the Class Action Settlement.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Allegations Concerning the ABS Module Defect.

Plaintiffs allege that each Class Vehicle is subject to the same uniform defect in the ABS module, also referred to as a hydraulic electronic control unit ("HECU"). *See Zakikhani v. Hyundai Motor Company et al.*, No. 8:20-cv-01584-SB-JDE ("*Zakikhani*"), Second Amended Class Action Complaint ("SAC"), Dkt. 49, ¶¶ 131-133. Plaintiffs allege that the defect present in the ABS modules can result in spontaneous vehicle fires—when a vehicle is parked and off, and when it is being driven—or the loss of ABS functionality (the "Defect"). *E.g.*, *id.* ¶ 5. The safety risks created by the Defect are alleged to be caused by a short circuit occurring within the ABS module. *Id.* The heightened risk of a short circuit within the module is alleged to be created by the presence of moisture within the module leading to corrosion of its internal components. *Id.* Beginning in 2016, Defendants have acknowledged the existence of the Defect in each Class Vehicle through a series of voluntary safety recalls filed with NHTSA (the "NHTSA Recalls"). *See id.* ¶¶ 11-18, 184-237.

### B.   History of the Litigation.

On August 25, 2020, Ramtin Zakikhani filed this class action after an extensive

pre-suit investigation by Plaintiffs' counsel that began on April 3, 2020. *See Zakikhani* Dkt. 1; Fegan Decl. ¶¶ 10-11. Counsel's rigorous investigation included analysis of the cause of the fire in Zakikhani's vehicle, work with an automotive expert regarding the cause of the fire, identification of the Defect in other vehicle models, review of documents published by NHTSA, investigation of additional vehicle owner complaints, and the investigation of potential legal claims. *Id*.

On November 13, 2020, Zakikhani, along with Elzinga and four additional plaintiffs, filed the First Amended Class Action Complaint ("FAC"). *Zakikhani* Dkt. 28. Defendants moved to dismiss the FAC on January 11, 2021. Dkt. 34. On June 28, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the FAC. *Zakikhani* Dkt. 48. Specifically, the Court held that it could exercise personal jurisdiction over HMC and KC but granted the remainder of the motion with leave to amend. *See id*.

On July 16, 2021, Zakikhani, Elzinga, Maddox, Washington, Talley, Olaciregui, Peacock, Irish, and Tinsley, along with another plaintiff, filed the SAC. *Zakikhani* Dkt. 49. The SAC alleges putative claims on behalf of a nationwide class of consumers under California law and individual state classes on behalf of consumers in California, Florida, Ohio, Maryland, Virginia, Rhode Island, Texas, and Missouri. *Id.* ¶¶ 306-307; *see also* Fegan Decl. ¶ 15.

On August 20, 2021, the Parties filed their Joint Rule 26(f) Report and on August 27, 2021, the Court held the initial case management conference. *Zakikhani* Dkt. 53, 55. Following the conference, the Court entered a condensed schedule which allowed discovery to proceed immediately, set a June 10, 2022 deadline for Plaintiffs' class certification motion, and set a trial date for April 17, 2023. *Zakikhani* Dkt. 55.

The Parties then engaged in an active and highly contested discovery practice, including related motions, hearings, and extensive Meet & Confer sessions. *See* Fegan Decl. ¶¶ 16-54. Plaintiffs conducted Rule 30(b)(6) depositions, and received

extensive document productions from Defendants, which included thousands of documents in English and in Korean. *Id*. ¶¶ 47-49, 51-52. Plaintiffs also produced substantial documents to Defendants. *Id*. ¶¶ 28, 44.

On September 14, 2021, Defendants filed their motion to dismiss the SAC. *Zakikhani* Dkt. 57. On January 25, 2022, the Court largely denied Defendants' motion and held that, among other things, Plaintiffs could pursue claims under California law on behalf of a nationwide class of consumers. *Id*. On February 8, 2022, Defendants answered the SAC. *Zakikhani* Dkt. 71.

On February 25, 2022, Evans, Vacchio, and Briaddy filed their Class Action Complaint against Defendants. *Evans v. Hyundai Motor Company et al*., No. 8:22-cv-00300-SB-JDE ("*Evans*"), Dkt. 1. The claims and putative class definitions alleged in *Evans* are nearly identical to the claims and classes alleged in *Zakikhani*.

Thereafter, counsel in *Evans* and *Zakikhani* agreed to join the prosecution of this matter, each appearing in the other's case. *Evans'* counsel immediately joined in the discovery process, including Korean document review and arguing a pending discovery motion before the Magistrate Judge. After a mediation date was set, counsel worked cooperatively to complete necessary discovery and prepare for presentation of their case to the mediator. Fegan Decl. ¶ 60; Berman Decl. ¶¶ 6-7.

On April 15, 2022, Pluskowski, Barber, Jacob, Ward, Miller, and Brady filed their Class Action Complaint alleging claims and a proposed nationwide class substantially similar to those in *Zakikhani* and *Evans*. *Pluskowski, et al. v. Hyundai Motor America, et al.*, No. 8:22-cv-00824 ("*Pluskowski*").

On April 25-26, 2022, counsel for Defendants, *Zakikhani*, and *Evans* attended mediation under the guidance of Hon. Edward A. Infante (Ret.) of JAMS. Fegan Decl. ¶ 61. Following more than fourteen hours of negotiations over the course of two days, a settlement in principle as to the benefits for the Class was reached, which was subsequently memorialized in a term sheet and the Settlement. *Id*. ¶¶ 61-63.

4

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:  8:20-CV-01584-SB-JDE

The Parties then engaged in confirmatory discovery, which included extensive research into each of the several "fixes" provided under the various NHTSA recalls and two additional Rule 30(b)(6) depositions of Defendants. Fegan Decl. ¶ 55.

### C.       The Settlement Consideration and Relief Provided to the Classes.

If approved, the Settlement will provide substantial benefits to the following Settlement Classes:

- Hyundai Class: All owners and lessees of a Hyundai Class Vehicle who purchased or leased the Hyundai Class Vehicle in the United States and including those purchased while the owner was abroad on active U.S. military duty.

- Kia Class: All owners or lessees of a Kia Class Vehicle who purchased or leased the Vehicle in the United States, including those purchased while the owner was abroad on active U.S. military duty.[2]

The relief—which is nationwide in scope—includes an extended warranty to cover future costs incurred relating to the Defect, a free inspection of ABS modules, monetary compensation for past expenses, ABS module repairs to remedy the Defect, and guaranteed maximum value and goodwill payments for Class Vehicles lost due to the Defect.

---

[2] Excluded from the Classes are: (a) all claims for death, personal injury, damage to property other than to the Class Vehicle itself, and subrogation; (b) any Defendant, and any affiliate, parent, or subsidiary of a Defendant; (c) any entity in which a Defendant has a controlling interest; (d) any officer, director, or employee of a Defendant; (e) any successor or assign of a Defendant; (f) any judge to whom the Litigation is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (g) consumers or businesses that have purchased Class Vehicles that, prior to the time of purchase, were deemed a total loss (i.e., salvage title or junkyard vehicles) (subject to verification through Carfax or other means); (h) current or former owners of Class Vehicles who, prior to the Notice Date, released their claims in an individual settlement with a Defendant; (i) owners who purchased the Class Vehicle with knowledge of existing damage to the ABS Module (damage that does not amount to a total loss; but rather, damage to the subject components); and (j) those persons who timely and validly exclude themselves from the Class. S.A. §§ 1.15, 1.17.

## 1.  Extended Warranty Coverage for ABS Modules

Upon completion of the applicable NHTSA Recall remedy, each Class Vehicle will receive a warranty extension, which covers all future costs associated with inspections and repairs, including, without limitation, the costs associated with parts, labor, and diagnoses of damage to the Class Vehicle caused by the ABS module Defect. For Class Members whose NVLW (5 years/60,000 miles) remains in effect as of the date of the Preliminary Approval Order, KA (for Kia vehicles) and HMA (for Hyundai vehicles) shall extend the warranty for 12-years. For Class Members with an expired NVLW as of the date of the Preliminary Approval Order and Class Certification Order, KA and HMA will provide a warranty for 5-years following the date of final approval.

If HMA or KA is unable to repair or replace a Class Vehicle's ABS module due to the unavailability of necessary components, HMA or KA will provide a warranty for the Class Member's Class Vehicle's ABS module to cover future Qualifying Repairs[3] for five (5) years from the date the NHTSA Recall repair or replacement is complete; provided, however, that the Class Member attests that they attempted to get an appointment for the recall repair at an authorized HMA or KA dealer but could not due to parts unavailability. S.A. §§ 2.1.3, 2.1.4.

Under the extended warranty, if a Class Member incurs an out-of-pocket expense, such as for a rental car or towing service, reasonably related to obtaining a Qualifying Repair, the Class Member shall be entitled to full reimbursement. S.A. § 2.6. There is no cap on the amount Defendants must pay for individual reimbursements or in the aggregate for qualified expenses.

Should any disputes about coverage under the warranty occur, they will be

---

[3] Qualifying Repair is any type of repair, replacement, diagnosis, or inspection, including a repair pursuant to a NHTSA Recall, of a Class Vehicle arising from the Qualifying Defect, but excluding Exceptional Neglect, or repairs which occurred after the Notice Date or after the parts necessary to repair the vehicle's ABS module were reasonably available. S.A. § 1.32.

6

resolved through the Better Business Bureau's ("BBB") alternative dispute resolution process. S.A. §§ 2.2.9, 3.3.4. Class Counsel shall have the right to participate in the BBB proceedings. *Id.* All costs and fees associated with the dispute process will be borne by Defendants, excluding a claimant's attorneys' fees. *Id.*

### 2.  Free One-Time Inspection of ABS Modules

If a Class Member brings their Class Vehicle into an authorized Hyundai dealership (for Hyundai Class Vehicles) or Kia dealership (for Kia Class Vehicles) for another unrelated service, they may receive a free ABS module inspection, to the extent the ABS module was previously repaired pursuant to a NHTSA Recall, to ensure the ABS module is free from defect. S.A. § 2.3.

### 3.  Reimbursement for Past Repairs

Class Members are eligible to receive full reimbursement by HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) for costs incurred for Qualifying Repairs obtained up to sixty (60) days after the date of final approval. S.A. § 2.5.1. Class members may receive reimbursement regardless of whether the Class Member was an original owner or lessee, or whether the Qualifying Repair was completed after receiving notification of any applicable NHTSA Recall. *Id.*

For reimbursement claims submitted for Qualifying Repairs performed at authorized Hyundai or Kia dealerships, and where Class Members attest that they no longer have receipts or repair documentation, HMA and KA shall take all reasonably available steps to acquire from the dealership the information reasonably necessary to approve the Claim.  S.A. § 2.5.3.

Reimbursements shall be provided even if warranty coverage was initially denied for allegedly failing to properly service or maintain the Class Vehicle. S.A. § 2.5.5.  Repair reimbursements will be denied if Exceptional Neglect is shown. *Id.*[4] As with the extended warranty, there are no caps on reimbursements for past repairs.

---

[4] "Exceptional Neglect" means: (a) when the vehicle clearly evidences a lack of maintenance or care, such that the vehicle appears dilapidated, abandoned, and/or

7

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:  8:20-CV-01584-SB-JDE

### 4.  Reimbursement for Other Repair-Related Expenses

In addition to reimbursements for Qualifying Repairs, Class Members are entitled to full reimbursement of any towing or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair. S.A. § 2.6.1. Consistent with the other benefits provided in the Settlement, there is no cap on such reimbursements.

### 5.  Loss of Vehicle Due to Fire

Any Class Member that suffers a loss of the Class Vehicle due to a fire caused by the Defect, prior to ninety days following the availability of the applicable NHTSA Recall remedy or the date of the Final Approval Order and Judgment, whichever is later, or following a repair or replacement of an ABS module pursuant to a NHTSA Recall, is entitled to payment of the maximum Black Book value of the Class Vehicle at the time of loss, or the residual value of any lease on the Class Vehicle, minus any proceeds or actual value received. S.A. § 2.4.1.

### 6.  Goodwill Payment for Loss of Vehicle

In addition to payment based on the maximum Black Book value of the Class Vehicle, if a Class Vehicle experienced a non-collision fire due to the Defect, the

---

beyond repair as a result of gross failure to service and/or maintain the vehicle; (b) failure of a Settlement Class Member to present a Class Vehicle to an authorized Kia dealer (for Kia Class Vehicles) or an authorized Hyundai dealer (for Hyundai Class Vehicles) to have the ABS Module in their Class Vehicle inspected within ninety (90) days of the Class Vehicle's ABS or ESC dashboard warning lights becoming illuminated; or (c) failure of a Settlement Class Member to present a Class Vehicle to an authorized Kia dealer (for Kia Class Vehicles) or an authorized Hyundai dealer (for Hyundai Class Vehicles) to have the ABS Module in their Class Vehicle inspected, repaired, and/or replaced pursuant to an applicable NHTSA Recall within ninety (90) days of: (i) the Notice Date, (ii) the mailing of the recall campaign notice, or (iii) the availability of the parts necessary to repair the Class Vehicle's ABS module pursuant to the recall at the nearest authorized Kia dealer (for Kia Class Vehicles) or authorized Hyundai dealer (for Hyundai Class Vehicles), whichever is later. S.A. § 1.12.

Class Member shall also receive a goodwill payment of $140 from HMA or KA. S.A. § 2.4.3. There is no cap on the aggregate goodwill payments HMA and KA may pay.

### 7. Recall and ABS Module Defect Repairs

Each Class Vehicle is subject to a voluntary safety recall issued by HMA or KA. As part of these NHTSA Recalls, HMA and KA implemented various repairs to ABS modules installed in these vehicles. As part of this settlement, Defendants represent that these recalls and product improvements represent part of the consideration to the Class. S.A. § 2.7.

## III.   ARGUMENT

### A.   The Settlement Merits Preliminary Approval.

As the Ninth Circuit recognizes, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted). Under Rule 23(e), the Court must determine "'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (overruled on other grounds)).

At the preliminary approval stage, the Court should assess whether "'the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Markson v. CRST Int'l, Inc.*, 2022 WL 1585745, at *2 (C.D. Cal. Apr. 1, 2022) (citation omitted).

### 1. The Settlement is the Product of Serious, Informed, Arm's-Length Negotiations by Experienced Counsel.

A proposed settlement is entitled to "an initial presumption of fairness" when

9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:   8:20-CV-01584-SB-JDE

the settlement has been "negotiated at arm's length by counsel for the class." A. Conte & H.B. Newberg, Newberg On Class Actions § 11:41 ("NEWBERG"); *see Harris v. Vector Mktg. Corp.,* 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining").

Here, the proposed Settlement is the culmination of nearly two years of diligent work by Plaintiffs' Counsel which are highly experienced in complex class action litigation. Plaintiffs retained consulting experts, devoted significant time to a pre-filing investigation, briefed two motions to dismiss, briefed a motion to amend the schedule, conducted discovery, and engaged in discovery-related motion practice. Fegan Decl. ¶¶ 10-55. The Parties also exchanged and reviewed thousands of documents in preparation for class certification (Fegan Decl. ¶¶ 28, 30, 47, 48.) *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("significant investigation, discovery and research" provides parties with sufficient information to make informed settlement decisions); *Byrne v. Santa Barbara Hosp. Servs., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) ("[t]he parties must … have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement") (citation omitted).

Only after the parties engaged in extensive discovery and motion practice did they engage in two days of mediation before Hon. Edward A. Infante (Ret.) of JAMS. Fegan Decl. ¶ 59; Berman Decl. ¶ 7. Neither the litigation and settlement process nor the substance of the Settlement indicate any collusion. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (rejecting objectors' argument that settlement was the product of collusion where allegations in the complaint preceded settlement by one year and there was no other evidence of collusion); *Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("As a general principle, 'the courts respect the integrity of counsel and presume the absence of

fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" (quoting NEWBERG § 11.51)); *see also Markson*, 2022 WL 1585745, at *2 (finding that a settlement reached after "nearly two years of litigation" and with the assistance of a third-party mediator supported preliminary approval).

Additionally, Plaintiffs' Counsel has represented consumers in a number of significant class actions, including actions against Hyundai and Kia, several of which resulted in successful, court-approved settlements. Fegan Decl. ¶¶ 6-9; Berman Decl. ¶ 3. As outlined above, the Settlement's terms are favorable to the Classes and on par with the relief Plaintiffs demanded in their respective complaints. *See* SAC ¶ 25.

Finally, while Defendants have agreed to separately pay an award of attorneys' fees and costs, there is no clear sailing provision in the Settlement. S.A. § 14.3. Plaintiffs will file a motion for attorneys' fees, costs and Class Representative Service Awards, which Defendants are free to oppose at any level. As such, there can be no actual or perceived conflict of interest with the Class Members with respect to the award of fees, which shall be decided by the Court. Fegan Decl. ¶ 61; Berman Decl. ¶ 11. *See Kemp v. Low Cost Interlock, Inc.*, 2020 WL 6107070, at *2 (C.D. Cal. Oct. 9, 2020) ("An agreement that assures Defendant's payment of attorneys' fees is separate from class relief and in an amount to be decided after proper motion briefing allows for safeguarding against collusion.").

The Settlement was thoroughly negotiated and results in a fair outcome for Class Members. The Court should preliminarily approve the proposed Settlement.

### 2.  The Settlement Treats All Class Members Equitably.

Whether a settlement provides preferential treatment to any class member turns on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015)

(finding no preferential treatment). Here, all members of the Classes will receive warranty extensions, the opportunity for reimbursement of out-of-pocket costs already incurred, the repairs to the ABS modules, and an inspection. Additionally, for those who experienced a fire, they will receive compensation for their vehicle and a goodwill payment. Thus, the benefits are proportionate to the harm each Class Member suffered on account of the Defect.

Likewise, the Class representatives will not receive preferential treatment or compensation disproportionate to their respective harm and contribution to the case under this proposed settlement. They are permitted to make claims for relief under the settlement terms like any other Class Member. Moreover, Plaintiffs will seek $5,000 for the *Zakikhani* Plaintiffs, who participated in months of discovery, and $2,500 for the *Evans* and *Pluskowski* Plaintiffs whose participation was shorter in duration, though still beneficial to the Class. *See Cisneros v. Airport Terminal Servs*., 2021 WL 3812163, at *9 (C.D. Cal. Mar. 26, 2021) ("'Courts have generally found that $5,000 incentive payments are reasonable.'" (citation omitted)); *La Fleur v. Med. Mgmt. Int'l, Inc.*, 2014 WL 2967475, at *8 (C.D. Cal. June 25, 2014) (approving incentive awards of $15,000 each to two class representatives from $535,000 settlement). Plaintiffs will submit declarations at final approval, detailing their participation in the litigation.

### 3. The Settlement Has No Obvious Deficiencies.

Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to Class members under Rule 23(e). *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (citation omitted); MANUAL (FOURTH) § 21.632, at 321-22. Because the proposed Settlement meets the requirements required for preliminary approval, as detailed herein, notice should be ordered to the Class.

### 4.  The Settlement Falls Within the Range of Possible Approval.

In determining whether to grant preliminary approval, district courts must consider several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 23(e). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Just. v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *see Moreno v. Pretium Packaging, L.L.C.*, 2021 WL 3673845, at *1 (C.D. Cal. Aug. 6, 2021) ("Each factor does not necessarily apply to every class action settlement, and others may also be considered." (citation omitted)).

#### i.  *The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation*

While Plaintiffs strongly believe in the strength of their claims, they recognize the considerable risks inherent in litigation and unique difficulties presented by the facts at issue here. *See Shahbazian v. Fast Auto Loans, Inc.* 2019 WL 8955420, at *6 (C.D. Cal. June 20, 2019) (recognizing "the uncertainty and risks inherent in litigation and potential appeals"). Among other challenges, this litigation concerns dozens of vehicle models, some of which were designed and sold nearly twenty years ago. Thus, establishing Defendants' knowledge of the Defect at the time of sale through records which may be more than two decades old presents considerable difficulties. Moreover, the parties litigated this matter on a condensed

discovery schedule and were faced with discovery that included foreign language documents and depositions. While Plaintiffs met these hurdles, the practicalities of these hurdles at trial entail additional risk and expense.

Further, class actions typically entail a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (affirming district court's approval of settlement and certification of class). Plaintiffs' Counsel are well experienced in complex class actions, including automotive defect actions, which take many years to resolve and are highly unpredictable. Although *Zakikhani* has been litigated for nearly two years and substantial discovery completed, there will be substantial additional expense to the Parties associated with class certification, dispositive motion practice, and pre-trial preparations. Additionally, by the time Plaintiffs' claims are presented to a jury, many more Class Members will have sold their vehicles, losing the benefit of the extended warranty. Finally, continuing to litigate this action would result in thousands of additional hours in attorney time, millions of dollars in expenses for both Parties, and delayed relief to the Classes.

This Settlement balances these costs, risks, and potential for delay with its benefits, achieving a settlement that is desirable to the Classes. *See* NEWBERG § 11:50 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### ii.   *The Risk of Maintaining Class Action Status Through Trial*

A litigation class has not been certified here. If this litigation continued without settlement, Plaintiffs face risk at the class certification stage. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) ("The value of a class action 'depends largely on the certification of the class,' and [] class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit." (citation omitted)).

14

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:  8:20-CV-01584-SB-JDE

Plaintiffs believe this case warrants class certification and they would marshal evidence in support of such a motion. Class certification proceedings, however, are highly discretionary. *See, e.g.*, *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011). Proceeding with a class certification motion here also raises the risk of the Court rejecting Plaintiffs' ability to provide relief to consumers nationwide. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) (finding that California's choice-of-law rules precluded a nationwide class of consumers).

Litigation following a successful class certification motion is equally plagued by risks. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (discussing the risk of continued litigation following class certification). It is highly uncertain whether the Classes would be able to obtain a better outcome through continued litigation and trial. In fact, there is a risk that the Classes would receive less or nothing at all at trial, and, even if Plaintiffs prevailed at trial, potential recovery could come years in the future. Moreover, much of the benefits of implementing the extended warranty to cover future expenses for the Class Vehicles would be diminished. Put simply, should Plaintiffs succeed at trial, it is unlikely that Class Members would receive relief superior to the Settlement presented here.

### iii. *The Amount and Type of Relief Offered in Settlement*

The Settlement, detailed above in Section II.C., provides Class Members with significant value in the form of monetary relief for past expenses, remedies for the Defect, an extended warranty for future injuries, if any, and guaranteed maximum value and goodwill payments for Class Vehicles lost due to the Defect. Class Members will therefore receive practically all the relief Plaintiffs sought in their complaints, while avoiding the risks of continued litigation. This factor thus weighs in favor of approval. *See Mendoza v. Hyundai Motor Co., Ltd.*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (finding similar consideration offered for vehicle defect claims weighed in favor of approval).

iv. *The Extent of Discovery Completed and the Stage of the Proceedings*

This factor contemplates whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. In class actions, the parties may obtain sufficient information pertaining to a settlement through formal or informal discovery. *See Clesceri v. Beach City Investigations & Protective Servs.*, 2011 WL 320998, at *9 (C.D. Cal. 2011) (citing *Linney*, 151 F.3d at 1239).

Before filing the initiating complaint and continuing through settlement negotiations, Class Counsel devoted substantial time to investigating the underlying facts and developing the factual and legal allegations. This included a review of publicly available sources of technical information, interviews of class members, analyses of the allegedly defective ABS modules, and consultation with automotive experts. Fegan Decl. ¶ 11-15; Berman Decl. ¶ 4.

After Defendants' motion to dismiss the *Zakikhani* FAC was denied in part and the Court allowed discovery to proceed, Plaintiffs' counsel served Defendants with requests for production of documents and interrogatories. Fegan Decl. ¶¶ 20-22. Defendants answered interrogatories, relating to, *inter alia*, the design and manufacturing of certain Class Vehicles, technical service bulletins relating to the Defect, the causes of the safety risks created by the Defect, and repairs necessary to remove the risk of engine compartment fires in the ABS modules. *Id*. Defendants also produced thousands of pages of documents. *Id*. These documents included analysis relating to Defendants' internal investigations into the Defect and its root cause, warranty claims, customer complaints, and communications with NHTSA. *Id*. Many documents were in Korean, thus requiring additional resources for review and understanding. Berman Decl. ¶ 6.

In addition to documents produced by Defendants, Plaintiffs served Mando America Corp ("Mando"), a supplier of ABS modules installed in certain Class

16

Vehicles, with a subpoena. Fegan Decl. ¶ 24. Mando produced documents that informed Plaintiffs' evaluation of the Settlement, including documents relating to Mando's internal analysis of the cause of the Defect. *Id*. ¶ 49.

Lastly, the Settlement provides for confirmatory discovery, which allowed Plaintiffs to verify the fairness of the benefits provided in the Settlement and obtain testimony from Hyundai and Kia with knowledge of the Defect and proposed remedies. S.A. at 3; Fegan Decl. ¶¶ 55, 64-65; Berman Decl. ¶¶ 8, 10.

Based on Class Counsel's substantial experience litigating automotive defect cases, the information received was sufficient to evaluate the fairness of the proposed settlement for the class. Berman Decl. ¶ 9. In the course of resolving this litigation, Plaintiffs had a strong understanding of the strength and weakness of their case and were well-situated to make an informed decision regarding settlement. Fegan Decl. ¶ 4, 65; Berman Decl. ¶¶ 9, 10.

### v.   *The Experience and Views of Counsel*

Class Counsel believes the Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions, and automotive defect class actions in particular. At the preliminary approval stage, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs.*, 559 F. Supp. at 1043. *See* Fegan Decl. ¶¶ 5-9 (discussing Counsel's experience); Berman Decl. ¶¶ 2-3 (same).

### vi.   *The Presence of a Governmental Participant*

There is no governmental participant in this litigation. The only connection with governmental entities in this litigation is Defendants' voluntary recalls of the Class Vehicles, which were overseen by NHTSA.

### vii.   *The Reaction of Class Members*

The Classes have yet to be notified of the Settlement and given an opportunity to object, so it is premature to assess this factor. *See Navarrete v. Sprint United*

17

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:  8:20-CV-01584-SB-JDE

*Mgmt. Co.*, 2021 WL 4352903, at \*11 (C.D. Cal. Mar. 2, 2021) (noting that the lack of evidence concerning this factor "is not uncommon at the preliminary approval stage").   Before the final approval hearing, the Parties will submit declarations concerning Class Members' reactions to the proposed settlement and any objections they receive after notice is disseminated. *See id*.

**B.    The Settlement Classes Should Be Certified.**

"To be certified, a class action must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and must also meet the requirements for one of the three types of class actions specified in Rule 23(b)." *Markson*, 2022 WL 1585745, at \*2 (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). "The criteria are applied differently depending on whether the class is being certified for litigation or settlement." *Id*.

**1.   The Settlement Classes Meet the Requirements of Rule 23(a).**

The Settlement Classes satisfy all four requirements under Rule 23(a). First, Rule 23(a)(1) requires the classes be "so numerous that joinder of all members is impracticable." Classes comprised of at least forty members are generally sufficient. *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010). Here, the proposed Settlement Classes encompass approximately three million Class Vehicles, satisfying numerosity. *See Patrick v. Volkswagen Grp. of Am.*, , 2021 WL 3616105, at \*1 (C.D. Cal. Mar. 10, 2021) (finding numerosity satisfied where the class size consisted of 14,847 settlement class vehicles sold in the United States).

Second, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation and quotation marks omitted). Commonality is "construed permissively" in the Ninth Circuit and a single question of law or fact common to the class may suffice. *Hanlon*, 150 F.3d at 1019. "All

1   questions of fact and law need not be common to satisfy the rule" and "[t]he
2   existence of shared legal issues with divergent factual predicates is sufficient, as is a
3   common core of salient facts coupled with disparate legal remedies within the class."
4   *Id*. (the "minimal requirements" of commonality satisfied where class members'
5   "claims stem from the same source: the allegedly defective designed rear liftgate
6   latch installed in minivans manufactured by Chrysler between 1984 and 1995.").

7        Here, each Class Member's claims stem from common questions, including:
8   (1) whether the ABS modules installed in their Class Vehicles contain a safety defect;
9   (2) whether Defendants had knowledge of the defect at the time of sale; (3) whether
10  Defendants concealed the defect; and (4) whether Defendants' conduct violates the
11  consumer protection statutes alleged, and the terms of their warranties. Each of these
12  questions gives rise to common answers, which would "drive the resolution of the
13  litigation" for the Class. *See Dukes*, 564 U.S. at 350. Thus, commonality is satisfied.

14       Third, Rule 23(a)(3) requires "the claims or defenses of the representative
15  parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).
16  "The purpose of the typicality requirement is to assure that the interest of the named
17  representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N.*
18  *Am.*, *LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). In light of its
19  purpose, typicality is interpreted "permissive[ly,]" like commonality, "and requires
20  only that the representative's claims are 'reasonably co-extensive with those of absent
21  class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591
22  F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020); *Wolin*, 617 F.3d
23  at 1175 ("The test of typicality is whether other members have the same or similar
24  injury, whether the action is based on conduct which is not unique to the named
25  plaintiffs, and whether other class members have been injured by the same course of
26  conduct." (citation omitted)).

27       Here, Plaintiffs' claims arise out of the same facts and circumstances as those
28

of the Classes because they each purchased or leased a Class Vehicle that contains an ABS module that is defective and recalled. Plaintiffs and the Classes thus suffered the same injury – namely, they were sold or leased a defective vehicle that has required or will require a repair to make the vehicle safe. *See Wolin*, 617 F.3d at 1175 ("Typicality can be satisfied despite different factual circumstances...."); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010) (finding "no authority for the argument that typicality is defeated because the remedies may be different for class members") (quoted in *Wolin*, 617 F.3d at 1175).

Fourth, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two components to adequacy: (1) the absence of any conflicts of interest between plaintiffs and their counsel and other class members; and (2) plaintiffs and their counsel's vigorous prosecution of the claims on behalf of absent class members. *See Hanlon*, 150 F.3d at 1020. Here, Plaintiffs and proposed Class Counsel do not have any conflicts of interest with other Class Members. Class Counsel has vigorously litigated this action for nearly two years, through several rounds of motion practice and discovery, and negotiated the proposed Settlement Agreement, with the assistance of a respected mediator and with the benefit of confirmatory discovery. Counsel has devoted thousands of hours in the prosecution of these claims and has incurred considerable expenses in their pursuit of relief on behalf of all Class members. Fegan Decl. ¶ 4, 10-64; Berman Decl. ¶ 11. Plaintiffs too have devoted themselves to the benefit of the Classes. Plaintiffs understand their duties as class representatives, have agreed to act in the best interest of the respective Classes, and have actively participated in this litigation, including discovery, and will continue to do so through final approval. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 566. Indeed, the significant benefits achieved for each Class Member only came about because of Plaintiffs' and Class Counsel's dedication to the best interests of the

1    Classes. Plaintiffs and Class Counsel thus easily satisfy the adequacy requirement and

2    Rule 23(a).

3          **2.  The Settlement Classes Meet the Requirements of Rule 23(b)(3).**

4          Rule 23(b)(3) requires the Court to find "the questions of law or fact common

5    to class members predominate over any questions affecting only individual members,

6    and that a class action is superior to other available methods for fairly and efficiently

7    adjudicating the controversy." Fed. R. Civ. P. 23(b).

8          First, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes

9    are sufficiently cohesive to warrant adjudication by representation . . . [and] focuses

10   on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at

11   1022. "There is no definitive test for determining whether common issues

12   predominate, however, in general, predominance is met when there exists generalized

13   evidence which proves or disproves an [issue or] element on a simultaneous, class-

14   wide basis…." *Herrera v. Wells Fargo Bank, N.A.*, 2021 WL 3932257, at *6 (C.D.

15   Cal. June 8, 2021) (citation omitted). The presence of certain issues that are not

16   suitable for class-wide adjudication, such affirmative defenses peculiar to some

17   individuals, do not defeat predominance. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

18   1036, 1045 (2016).

19         Here, the questions at the core of Plaintiffs' claims are whether the Class

20   Vehicles are similarly defective (namely, containing defective ABS modules that may

21   result in vehicle fires), whether Defendants had a duty to disclose the Defect at the

22   time of sale, whether Defendants knowingly concealed the Defect, and whether the

23   members of the Classes suffered an economic loss as a result of the omission. Each of

24   these questions is answered based on evidence common to all members of the

25   Classes. For example, the evidence any member of the Class will rely on to show

26   Defendants' knowledge of the Defect will include, among other things, Defendants'

27   design records and warranty claim data, neither of which would change in any respect

28

from one member to the next. These common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045; *see Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so.").

Second, an automotive defect class action such as this presents the prototypical action for class treatment. *See*, *e.g.*, *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 549-50 (C.D. Cal. 2012). "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. The meaningful benefits achieved in this Settlement were obtained based upon the strength of the Classes' claims in the aggregate. The cost to prosecute an automotive defect case is exorbitant and far exceeds the amount of damages suffered by any individual class member. Individual litigation is simply an inferior method of adjudication and not a viable alternative for most consumers. *See Keegan*, 284 F.R.D. at 549-50.  Finally, in a settlement, "the proposal is that there be no trial," and so manageability considerations do not affect whether the proposed settlement class should be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556-57 ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").

The Classes meet the predominance and superiority requirements of Rule 23(b)(3), and therefore should be certified for purposes of settlement by this Court.

## C.   <u>The Court Should Order Dissemination of the Class Notices.</u>

The Court's decision whether to order dissemination of a notice of a proposed settlement "is an important event" and "should be based on a solid record supporting

the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment. Before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (citation and quotation marks omitted). The notice program provided in the Settlement Agreement satisfies these standards.

The notice program includes dedicated settlement websites, a robust Long Form Notice available on the website, and Short Form Notices that will be sent via U.S. mail. Claims can be submitted by U.S. mail, email, or through the settlement websites. Consumers will be able to enter their Vehicle Identification Numbers ("VIN") on the settlement websites, without completing a claim form, to easily determine if their vehicles are indeed Class Vehicles. Hyperlinks to the settlement websites will be posted on HMA's and KA's respective websites. Under the Settlement, Defendants shall pay all Class notice and settlement administration costs.

### 1.  The Settlement Provides the Best Method of Notice Practicable.

The Settlement Agreement provides that all identifiable Class Members will receive a copy of the Hyundai or Kia Short Form Notice and a Claim Form via direct U.S. mail, which satisfies the requirements of due process. *See Sullivan v. Am. Express Publ'g Corp.*, 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) ("Notice by mail has been found by the Supreme Court to be sufficient..." (citation omitted)).

To identify Class Members for notice, Defendants will provide all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to IHS Markit, or a similar third-party entity, which is authorized to use that information to obtain the names and most current addresses of Class Members through state agencies. In addition, an address search will be conducted through the United States Postal Service's National Change of Address database to update the address information for Class Members. If a notice is returned as undeliverable, best efforts will be used to conduct an advanced address search using Defendants' customer databases.

In addition to notice through U.S. mail, the settlement administrator(s) will also email a hyperlink to the dedicated settlement websites and an electronic version of the Long Form Notice and Claim Form to Class Members for which Defendants maintain an email address. The dedicated settlement websites will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism for Class Members to submit claims electronically; (iii) instructions on how to contact the Settlement Administrator(s) for assistance with claims; (iv) the Long Form Notice; (v) the Claim Form; (vi) the Settlement Agreement; (vii) any orders issued in this litigation approving or disapproving of the proposed Settlement; and (viii) any other information the Parties determine is relevant to the Settlement. Defendants will make the same information available to Class Members through HMA's and KA's websites via links to the dedicated settlement websites (apart from the mechanism for submitting claims, Defendants' customer service departments will also be available to respond to questions regarding the status of submitted claims, how to submit a claim, and other aspects of the settlement via a dedicated, toll-free telephone number. Finally, Class Counsel will receive from the Settlement Administrator(s) reports of the total number of notices sent to Class Members by U.S. mail and email, along with the numbers of notices returned as undeliverable, so that counsel may ensure notice is appropriately disseminated.

Accordingly, Plaintiffs request that the Court approve this method of notice as the best practicable method under the circumstances. *See, e.g.*, *Rannis*, 380 F. App'x at 650 (finding mailed notice the best notice practicable where reasonable efforts were taken to ascertain class members' addresses).

### 2.  The Proposed Notices Inform Class Members of their Rights.

The notice provided to Class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the Parties complies with those requirements. S.A., Exs. B(1), B(2), C. The Long Form Notice to be sent to Class members through U.S. Mail and email will explain the terms of the Settlement, the Class definitions, the underlying litigation, and the fact that Class Members may appear through counsel; detail the process for requesting exclusion from the Settlement; and disclose the binding effect of the Settlement on Class Members if they do not request exclusion from the Court. *Id.*

Plaintiffs believe this is the most effective way to alert Class members to the existence of the Settlement and convey detailed information about the settlement approval process, and accordingly ask the Court to approve the proposed forms of Notice. *See Banh v. Am. Honda Motor Co.*, 2021 WL 3468113, at *9 (C.D. Cal. June 3, 2021) (approving notice plan comprised of mailing and email to class members and creation of settlement website).

### 3.  Notice to Federal and State Officials.

Notice of the Settlement will be provided by Defendants to the U.S. Attorney General and appropriate regulatory officials, as required by 28 U.S.C. § 1715.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the motion and enter the accompanying Preliminary Approval and Class Certification Order. The Parties respectfully request that the Court set a schedule for key dates including a date for a Fairness Hearing and propose the following:

| EVENT | DATE |
| --- | --- |
| Preliminary Approval Hearing | September 16, 2022 |
| Class Notice Disseminated ("Notice Date") | No later than 120 days after entry of Preliminary Approval and Class Certification Order |
| Motion for Approval of Attorneys' Fees and Expenses and Service Awards Filed | 30 days after Notice Date |
| Motion for Final Approval Filed | 30 days after Notice Date |
| Objection and Opt-Out Deadline | 45 days after Notice Date |
| Reply Memoranda in Support of Final Approval and Fee Application Filed | 60 days after Notice Date |
| Declaration of CAFA Notice Pursuant to 28 U.S.C. § 1715 Filed by Defendants | 15 days after Notice Date |
| Settlement Fairness Hearing | No earlier than 90 days after Notice Date |

Dated:  August 15, 2022      By:  _/s/  Elizabeth A. Fegan_____
Elizabeth A. Fegan (*pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld (*pro hac vice*)
FEGAN SCOTT LLC
140 Broadway, 46th Floor
New York, NY 10005
Phone: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

| | |
|---|---|
| 1 | Steve W. Berman (*pro hac vice*) |
| 2 | Thomas E. Loeser (SBN 202724) |
| | HAGENS BERMAN SOBOL SHAPIRO |
| 3 | LLP |
| | 1301 Second Avenue, Suite 2000 |
| 4 | Seattle, WA  98101 |
| | Telephone:  (206) 623-7292 |
| 5 | E-mail: steve@hbsslaw.com |
| 6 | E-mail: toml@hbsslaw.com achel E. |
| | Fitzpatrick (*pro hac vice*) |
| 7 | HAGENS BERMAN SOBOL SHAPIRO |
| | LLP |
| 8 | 11 West Jefferson Street, Suite 1000 |
| 9 | Phoenix, AZ  85003 |
| | (602) 840-5900 |
| 10 | E-mail: rachelf@hbsslaw.com |
| 11 | |
| | Jonathan M. Jagher (*pro hac vice*) |
| 12 | FREED KANNER LONDON & MILLEN |
| | LLC |
| 13 | 923 Fayette Street |
| | Conshohocken, PA  19428 |
| 14 | Telephone:  (610) 234-6487 |
| 15 | E-mail:  jjagher@fklmlaw.com |
| 16 | Brian M. Hogen (*pro hac vice*) |
| | FREED KANNER LONDON & MILLEN |
| 17 | LLC |
| | 2201 Waukegan Road, Suite 130 |
| 18 | Bannockburn, IL 60015 |
| 19 | Telephone: (224) 632-4500 |
| | E-mail: bhogan@fklmlaw.com |
| 20 | |
| 21 | Katrina Carroll (*pro hac vice*) |
| | 111 W. Washington Street, Suite 1240 |
| 22 | Chicago, IL 60602 |
| | Telephone: (312) 750-1265 |
| 23 | E-mail: katrina@lcllp.com |
| 24 | |
| 25 | Todd D. Carpenter |
| | Lynch Carpenter LLP |
| 26 | 1350 Columbia Street, Suite 603 |
| | San Diego, CA  92101 |
| 27 | Telephone:  (619) 762-1910 |
| | E-mail: todd@lcllp.com |
| 28 | |
| | Jennifer A. Lenze, CA Bar # 246858 |

LENZE LAWYERS, PLC.
1300 Highland Avenue, Suite 207
Manhattan Beach, CA 90266
Telephone: (310) 322-8800
Facsimile: (310) 322-8811
jlenze@lenzelawyers.com

J. Barton Goplerud (*pro hac vice*)
SHINDLER, ANDERSON, GOPLERUD &
WEESE PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
E-mail: goplerud@sagwlaw.com

Rosemary M. Rivas
David Stein
Rosanne L. Mah
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

*Attorneys for Plaintiffs*