Elizabeth A. Fegan (*pro hac vice*)
beth@feganscott.com
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: 312.741.1019
Facsimile: 312.264.0100

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Settlement Class Counsel and Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMTIN ZAKIKHANI, KIMBERLY ELZINGA, THEODORE MADDOX JR., MICHAEL SUMMA, JACQUELINE WASHINGTON, PATTI TALLEY, ANA OLACIREGUI, ELAINE PEACOCK, MELODY IRISH, and DONNA TINSLEY, individually and on behalf of all others similarly situated, | Case No.:   8:20-cv-01584-SB-JDE **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Plaintiffs, | Judge: Hon. Stanley Blumenfeld, Jr. Date:    April 21, 2023 |
| v. | Time:  8:30 a.m. Courtroom:  6C |
| HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR AMERICA, KIA CORPORATION, and KIA AMERICA, INC., | |
| Defendants. | |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that at 8:30 a.m. on April 21, 2023, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Stanley Blumenfeld Jr., located at First Street Courthouse, 350 W. First Street, Courtroom 6C, Los Angeles, California 90012, Plaintiffs Kimberly Elzinga, Theodore Maddox, Jr., Jacqueline Washington, Patti Talley, Ana Olaciregui, Elaine Peacock, Melody Irish, Donna Tinsley, Ramtin Zakikhani, Brenda Evans, Anthony Vacchio, Minda Briaddy, Adam Pluskowski, Ricky Barber, Lucille Jacob, Carla Ward, Pepper Miller, and Cindy Brady ("Plaintiffs") will and hereby do move for an order of the Court to finally approve the class action settlement and reaffirm its certification of the Settlement Classes.

Plaintiffs' unopposed motion is based on this notice; the accompanying Memorandum of Law; the Declaration of Elizabeth A. Fegan in support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Fegan Decl.") and all attachments thereto (including the Declarations of Susan K. Thompson, Elizabeth Fernandez, and Amanda Sternberg); the Declaration of Steve W. Berman in support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Berman Decl."); the Proposed Order Granting Final Approval of the Class Action Settlement; and all other papers filed and proceedings had in this Action.

This unopposed motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 20, 2023.

Dated:  March 20, 2023            By:  _/s/  Elizabeth A. Fegan_
                                  Elizabeth A. Fegan (*pro hac vice*)
                                  FEGAN SCOTT LLC
                                  150 S. Wacker Dr., 24th Floor
                                  Chicago, IL 60606
                                  Phone: 312.741.1019
                                  Fax: 312.264.0100
                                  beth@feganscott.com

Jonathan D. Lindenfeld (*pro hac vice*)
FEGAN SCOTT LLC
140 Broadway, 46th Floor
New York, NY 10005
Phone: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

Steve W. Berman (*pro hac vice*)
Thomas E. Loeser (SBN 202724)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA  98101
Telephone:  (206) 623-7292
E-mail: steve@hbsslaw.com
E-mail: toml@hbsslaw.com

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
(602) 840-5900
E-mail: rachelf@hbsslaw.com

Jonathan M. Jagher (*pro hac vice*)
FREED KANNER LONDON & MILLEN LLC
923 Fayette Street
Conshohocken, PA  19428
Telephone:  (610) 234-6487
E-mail:  jjagher@fklmlaw.com

Katrina Carroll (*pro hac vice*)
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
E-mail: katrina@lcllp.com

Todd D. Carpenter
Lynch Carpenter LLP
1350 Columbia Street, Suite 603
San Diego, CA  92101
Telephone:  (619) 762-1910
E-mail: todd@lcllp.com

Jennifer A. Lenze, CA Bar # 246858
LENZE LAWYERS, PLC.
1300 Highland Avenue, Suite 207
Manhattan Beach, CA 90266
Telephone: (310) 322-8800
Facsimile: (310) 322-8811
jlenze@lenzelawyers.com

J. Barton Goplerud (*pro hac vice*)
SHINDLER, ANDERSON, GOPLERUD &
WEESE PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
E-mail: goplerud@sagwlaw.com

Rosemary M. Rivas
David Stein
Rosanne L. Mah
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

*Attorneys for Plaintiffs*

# Table of Contents

I.    INTRODUCTION ..................................................................................1

II.    FACTUAL BACKGROUND ..............................................................2

   A.    Plaintiffs' Allegations Concerning the ABS Module Defect ...........2

   B.    History of the Litigation. ...................................................................3

   C.    Preliminary Approval of the Settlement ...........................................6

   D.    The Settlement Consideration and Relief Provided to the
      Classes ...............................................................................................6

      1.    Extended Warranty Coverage for ABS Modules ...................8

      2.    Free One-Time Inspection of ABS Modules .......................10

      3.    Reimbursement for Past Repairs .........................................10

      4.    Reimbursement for Other Repair-Related Expenses ...........12

      5.    Total Loss of Vehicle Due to Fire .......................................12

      6.    Goodwill Payment for Total Loss of Vehicle ......................12

      7.    Recall and ABS Module Defect Repairs .............................12

      8.    The Release ..........................................................................13

   E.    Notice of the Settlement ..................................................................13

III.   ARGUMENT ....................................................................................14

   A.    The Court Should Reaffirm its Certification of the Settlement
      Classes .............................................................................................14

   B.    The Settlement is Fair, Reasonable, and Adequate .........................14

      1.    The Strength of Plaintiffs' Case .........................................15

      2.    The Risk, Expense, Complexity, and Duration of Further
   Litigation .......................................................................................16

      3.    Risk of Maintaining a Class Action Throughout Trial .........17

vi

4.    The Amount Offered in the Settlement .................................................18

5.    Extent of Discovery and Stage of the Proceedings .............................19

6.    The Experience and Views of Counsel...................................................20

7.    The Presence of a Governmental Participant .......................................20

8.    The Reaction of the Classes...................................................................21

9.    The Settlement is Not the Product of Collusion....................................21

C.    Direct Notice was Given to All Class Members in a Reasonable
        Manner ....................................................................................................22

IV.  CONCLUSION...................................................................................................23

# Table of Authorities

**Cases**            **Page(s)**

*Banh v. Am. Honda Motor Co.*,
    Case No. 2:19-cv-05984-RGK-AS,
    2021 WL 3468113 (C.D. Cal. June 3, 2021) ........................................................22

*Barragan v. Populus Fin. Grp., Inc.*,
    Case No. 2:21-cv-08021-SB-MRW, Dkt. 38,
    2023 U.S. Dist. LEXIS 27605, (C.D. Cal. Feb. 10, 2023) ....................................17

*Bravo v. Gale Triangle, Inc.*,
    CV 16-03347 BRO (GJSx), 2017 WL 708766 (C.D. Cal. Feb. 16, 2017) .............22

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016).............................................................14, 18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004)................................................................................23

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)..............................................................................14

*Conti v. Am. Honda Motor Co.*,
    Case No. CV 19-02160-CJC (GJSx), Dkt. 99,
    2022 U.S. Dist. LEXIS 1561, at *30 (C.D. Cal.  Jan. 4, 2022) ........................17, 19

*Contreras v. Armstrong Flooring*,
    Case No. CV 20-3087 PSG (SKx), 2021 WL 4352299 (C.D. Cal. July 6, 2021) ...22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)..............................................................................15

*Hardmon v. Ascena Retail Grp., Inc.*,
    Case No. EDCV 19-02207-MWF (KKx),
    2022 WL 17572098 (C.D. Cal. Nov. 29, 2022)....................................................20

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)...........................................................................15, 21

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ...............................................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)...........................................................................15, 20

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012).....................................................................15

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)...................................................................19

*Mendoza v. Hyundai Motor Co.*,
  Case No. 15-cv-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ...........21

*Miller v. Wise Co.*,
  Case No. ED CV17-00616 JAK (PLAx),
  2020 WL 1129863 (C.D. Cal. Feb. 11, 2020)..........................................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982).....................................................................18

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ..............................................................22

*Ruiz v. JCP Logistics, Inc.*,
  Case No. SACV 13-1908-JLS (ANx),
  2016 WL 6156212, (C.D. Cal. Aug. 12, 2016) .......................................17

*Satchell v. Fed. Exp. Corp.*,
  Case No. C 03–2878 SI., 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ...............21

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994).....................................................................22

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003).....................................................................15

*Wallace v. Countrywide Home Loans, Inc.*,
  Case No. SACV 08–1463–JLS (MLGx),
  2015 WL 13284517 (C.D. Cal. Apr. 17, 2015).........................................21

*Zubia v. Shamrock Foods Co.*,
  Case No. CV 16-03128-AB (AGRx),
  2017 WL 10541431 (C.D. Cal. Dec. 21, 2017) .......................................18

**Rules**

Fed. R. Civ. P. 23..................................................................................*passim*

## I.    INTRODUCTION

Plaintiffs seek final approval of the Settlement, which provides numerous comprehensive forms of relief to millions of current and former owners and lessees of approximately three million Class Vehicles.[1] This litigation concerns alleged safety defect found in the Anti-Lock Brake System ("ABS") modules installed in the Class Vehicles.  Under the Settlement, Class Members are entitled to substantial repair, full reimbursement for Defect related expenses, a warranty extension that revives ABS module coverage where the New Vehicle Limited Warranties ("NVLWs") expired and nearly doubles the NVLW for vehicles where the warranty has not run, a free inspection to ensure the continued safety of the repaired ABS modules, and guaranteed maximum value compensation and goodwill payments in the event of a fire. Based on the expert Report of Susan K. Thompson ("Thompson Report," filed as Exhibit 1 to the Declaration of Elizabeth A. Fegan ("Fegan Decl.")), the warranty extension, free inspection, and repair reimbursement benefits alone are valued at a minimum of $326 million, and up to $652 million if there is even a 5% claims rate for repair reimbursement and 50% of Class Members take advantage of the free inspection at some point during the life of the extended warranty.

---

[1] All capitalized terms shall have the same meaning as in the Amended Settlement Agreement ("S.A."), filed on the docket as entry number 131-1. The Class Vehicles refer to the following vehicles: Hyundai Tucson (model years ("MY") 2014-2021), Hyundai Santa Fe (MY2007, 2017-2018), Hyundai Santa Fe Sport (MY2013-2015, 2017-2018), Hyundai Santa Fe XL (MY2019), Hyundai Azera  (MY2006-2011), Genesis G80 (MY2017-2020), Genesis G70 (MY2019-2021), Hyundai Genesis (MY2015-2016), Hyundai Elantra (MY2007-2010), Hyundai Elantra Touring (MY2009-2011), Hyundai Sonata (MY2006), Hyundai Entourage (MY2007-2008), Kia Sportage (MY2008-2009, 2014-2021), Kia Sorento (MY2007-2009, 2014-2015), Kia Optima (MY 2013-2015), Kia Stinger (MY2018-2021), Kia Sedona (MY2006-2010), Kia Cadenza (MY 2017-2019), and Kia K900 vehicles (MY2016-2018), which were the subject of NHTSA Recalls. S.A., ¶¶ 1.16, 1.18, 1.21.

Moreover, there is no aggregate cap on the amount of payments Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA")[2] are required to make under the Settlement. Further, while there is no clear sailing provision, Defendants have agreed to pay attorneys' fees and costs awarded by the Court separately from the benefits provided to the Classes.

The exceptional benefits provided in the Settlement, which provides virtually all of the damages sought in this litigation, was only achieved after more than two years of highly adversarial litigation with well-funded defendants and defense counsel.  After conducting extensive pre-suit investigations, briefing two motions to dismiss and discovery motions, and engaging in written, documentary, and oral discovery in preparation for class certification and trial, the parties were well informed as to the strengths and weaknesses of the case. The knowledge gained over the prior two years informed the parties' multiple mediation sessions with Hon. Edward A. Infante (Ret.) of JAMS and the parties engaged in serious, informed negotiations, resulting in the exceptional Settlement.

After the Court granted preliminary approval of the Settlement on October 20, 2022, notice of the Settlement was issued to the Classes. The robust notice plan informed Class Members of the Settlement through U.S. mail, email, and dedicated settlement websites.

Given the results achieved and consideration of the Rule 23 factors for approval of class settlements in the Ninth Circuit, Plaintiffs respectfully request the Court grant final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Allegations Concerning the ABS Module Defect.

Plaintiffs allege that each Class Vehicle is subject to the same uniform defect

---

[2] Defendants Hyundai Motor Company ("HMC"), Kia Corporation ("KC"), along with KA and HMA are collectively referred to as "Defendants."

in the ABS module, also referred to as a hydraulic electronic control unit ("HECU"). *See Zakikhani v. Hyundai Motor Company et al.*, No. 8:20-cv-01584-SB-JDE ("*Zakikhani*"), Second Amended Class Action Complaint ("SAC"), Dkt. 49, ¶¶ 131-133. Plaintiffs allege that the defect present in the ABS modules can result in spontaneous vehicle fires—when a vehicle is parked and off, and when it is being driven—or the loss of ABS functionality (the "Defect"). *E.g.*, *id*. ¶ 5. The safety risks created by the Defect are alleged to be caused by a short circuit occurring within the ABS module. *Id*. The heightened risk of a short circuit within the module is alleged to be created by the presence of moisture within the module leading to corrosion of its internal components. *Id*. Beginning in 2016, Defendants have acknowledged the existence of the Defect in each Class Vehicle through a series of voluntary safety recalls filed with National Highway Traffic Safety Administration ("NHTSA") (the "NHTSA Recalls"). *See id*. ¶¶ 11-18, 184-237.

## B.   History of the Litigation.

On August 25, 2020, Ramtin Zakikhani filed this class action after an extensive pre-suit investigation by Plaintiffs' counsel that began on April 3, 2020. *See Zakikhani* Dkt. 1; Fegan Decl. ¶¶ 5-9. Counsel's rigorous investigation included analysis of the cause of the fire in Zakikhani's vehicle, work with an automotive expert regarding the cause of the fire, identification of the Defect in other vehicle models, review of documents published by NHTSA, investigation of additional vehicle owner complaints, and the investigation of potential legal claims. *Id*.

On November 13, 2020, Zakikhani, along with Elzinga and four additional plaintiffs, filed the First Amended Class Action Complaint ("FAC"). *Zakikhani* Dkt. 28. Defendants moved to dismiss the FAC on January 11, 2021. *Zakikhani* Dkt. 34. On June 28, 2021, the Court granted in part and denied in part Defendants' motion to dismiss the FAC. *Zakikhani* Dkt. 48. Specifically, the Court held that it could

exercise personal jurisdiction over HMC and KC but granted the remainder of the motion with leave to amend. *See id.*

On July 16, 2021, Zakikhani, Elzinga, Maddox, Washington, Talley, Olaciregui, Peacock, Irish, and Tinsley, along with another plaintiff, filed the SAC. *Zakikhani* Dkt. 49. The SAC alleges putative claims on behalf of a nationwide class of consumers under California law and individual state classes on behalf of consumers in California, Florida, Ohio, Maryland, Virginia, Rhode Island, Texas, and Missouri. *Id.* ¶¶ 306-307; *see also* Fegan Decl. ¶ 13.

On August 20, 2021, the Parties filed their Joint Rule 26(f) Report and on August 27, 2021, the Court held the initial case management conference. *Zakikhani* Dkt. 53, 55. Following the conference, the Court entered a condensed schedule which allowed discovery to proceed immediately, set a June 10, 2022 deadline for Plaintiffs' class certification motion, and set a trial date for April 17, 2023. *Zakikhani* Dkt. 55.

The Parties then engaged in an active and highly contested discovery practice, including related motions, hearings, and extensive Meet & Confer sessions. *See* Fegan Decl. ¶¶ 18-53. Plaintiffs conducted Rule 30(b)(6) depositions, and received extensive document productions from Defendants, which included thousands of documents in English and in Korean. *Id.* ¶¶ 46-48, 50-52. Plaintiffs also produced substantial documents to Defendants. *Id.* ¶¶ 28, 43.

On September 14, 2021, Defendants filed their motion to dismiss the SAC. *Zakikhani* Dkt. 57. On January 25, 2022, the Court largely denied Defendants' motion and held that, among other things, Plaintiffs could pursue claims under California law on behalf of a nationwide class of consumers. *Id.* On February 8, 2022, Defendants answered the SAC. *Zakikhani* Dkt. 71.

On February 25, 2022, after undertaking an investigation that included a review of publicly available sources of technical information, research into the allegedly defective ABS modules, and discussions with numerous putative class

members, Plaintiffs Evans, Vacchio, Briaddy, and one other plaintiff filed, *Evans v. Hyundai Motor Company, et al.*, No. 8:22-cv-00300-SB-JDE (C.D. Cal.) ("*Evans*"), asserting claims for violations of the Magnuson-Moss Warranty Act, state law, and common law. Berman Decl. ¶ 6. Like *Zakikhani*, *Evans* alleged Defendants' flawed design and manufacturing processes resulted in the production and sale of Hyundai and Kia vehicles with defective ABS modules, but *Evans* included additional newly recalled vehicles. *Evans*, Dkt. 1; Berman Decl. ¶ 6.

Thereafter, counsel in *Evans* and *Zakikhani* agreed to join the prosecution of this matter, each appearing in the other's case. Berman Decl. ¶ 7. *Evans*' counsel immediately joined in the discovery process, including Korean document review and arguing a pending discovery motion before the Magistrate Judge. Berman Decl. ¶ 8. After a mediation date was set, counsel worked cooperatively to complete necessary discovery and prepare for presentation of their case to the mediator. Fegan Decl. ¶ 57; Berman Decl. ¶ 9.

On April 15, 2022, Pluskowski, Barber, Jacob, Ward, Miller, and Brady filed their Class Action Complaint alleging claims and a proposed nationwide class substantially similar to those in *Zakikhani* and *Evans*. *Pluskowski, et al. v. Hyundai Motor America, et al.*, No. 8:22-cv-00824 ("*Pluskowski*").

On April 25-26, 2022, counsel for Defendants, *Zakikhani*, and *Evans* attended mediation under the guidance of Hon. Edward A. Infante (Ret.) of JAMS. Fegan Decl. ¶ 58; Berman Decl. ¶ 9. Following more than fourteen hours of negotiations over the course of two days, a settlement in principle as to the benefits for the Class was reached, which was subsequently memorialized in a term sheet and the Settlement. Fegan Decl. ¶¶ 58-59; Berman Decl. ¶ 9.

The Parties then engaged in confirmatory discovery, which included research into each of the several fixes provided under the various NHTSA recalls and two

1    additional Rule 30(b)(6) depositions of Defendants. Fegan Decl. ¶ 54; Berman Decl.

2    ¶ 12.

3    **C.    Preliminary Approval of the Settlement.**

4        Plaintiffs filed their unopposed motion for preliminary approval of the

5    Settlement on August 15, 2022. Dkt. 115. On October 3, 2022, the Court issued an

6    Order directing the parties to submit an amendment to the Settlement in order to

7    clarify certain issues discussed during the September 23, 2022 hearing on Plaintiffs'

8    motion for preliminary approval. Dkt. 127. On October 17, 2022, Plaintiffs filed the

9    amended Settlement Agreement, which: (1) made clear that Class Members are not

10   releasing "any claims that arise from any future NHTSA recall," S.A. § 1.35; (2)

11   specified that if the ABS Module Defect causes a fire that does not result in a Total

12   Loss, "the Class Member shall be entitled to a Qualifying Repair to the extent such

13   Qualifying Repair is covered by the extended warranties," *id*. § 2.4.3; (3) specified

14   the methodology used to determine the value that Class Members may receive in the

15   event of a qualifying Total Loss of a leased Class Vehicle, *id*. § 2.4.2; and (4) made

16   certain changes to the proposed Notices and Claim Form. Dkt. 129.[3]

17       On October 20, 2022, the Court issued an Order, *inter alia*, (1) granting

18   Plaintiffs' motion for preliminary approval of the Amended Settlement Agreement;

19   and (2) setting a Fairness Hearing for April 21, 2023, at 8:30 a.m. Dkt. 130. The

20   Order further provided that Class Members must object or opt out of the Settlement

21   on or before April 4, 2023. *Id*.

22   **D.    The Settlement Consideration and Relief Provided to the Classes.**

23       If approved, the Amended Settlement will provide substantial benefits to the

24   following Settlement Classes:

25

26   _____

27   [3] On October 21, 2022, Plaintiffs filed a fully executed copy of the Amended
     Settlement Agreement (Dkt. 131-1). All citations to settlement benefits are to the

28   Amended Settlement Agreement.

- **Hyundai Class**: All owners and lessees of a Hyundai Class Vehicle who purchased or leased the Hyundai Class Vehicle in the United States and including those purchased while the owner was abroad on active U.S. military duty.

- **Kia Class**: All owners or lessees of a Kia Class Vehicle who purchased or leased the Vehicle in the United States, including those purchased while the owner was abroad on active U.S. military duty.

Excluded from the Classes (and not released by the Settlement) are: (a) all claims for death, personal injury, damage to property other than to the Class Vehicle itself, and subrogation; (b) any Defendant, and any affiliate, parent, or subsidiary of a Defendant; (c) any entity in which a Defendant has a controlling interest; (d) any officer, director, or employee of a Defendant; (e) any successor or assign of a Defendant; (f) any judge to whom the Litigation is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; (g) consumers or businesses that have purchased Class Vehicles that, prior to the time of purchase, were deemed a Total Loss (i.e., salvage title or junkyard vehicles) (subject to verification through Carfax or other means); (h) current or former owners of Class Vehicles who, prior to the Notice Date, released their claims in an individual settlement with a Defendant; (i) owners who purchased the Class Vehicle with knowledge of existing damage to the ABS Module (damage that does not amount to a Total Loss; but rather, damage to the subject components); and (j) those persons who timely and validly exclude themselves from the Class. S.A. §§ 1.15, 1.17.

The relief—which is nationwide in scope—includes an extended warranty to cover future costs incurred relating to the Defect, a free inspection of ABS modules, monetary compensation for past expenses, ABS module repairs to remedy the Defect, and guaranteed maximum value and goodwill payments for Class Vehicles lost due to

the Defect. As the Court noted when granting preliminary approval, "these forms of relief are targeted to the injuries Class Members allegedly suffered[.]" Dkt. 130 at 6.

### 1. Extended Warranty Coverage for ABS Modules

Upon completion of the applicable NHTSA Recall remedy, each Class Vehicle will receive a warranty extension, which covers all future costs associated with inspections and repairs, including, without limitation, the costs associated with parts, labor, and diagnoses of damage to the Class Vehicle caused by the ABS module Defect. For Class Members whose NVLW (5 years/60,000 miles) remains in effect as of the date of the Preliminary Approval Order, KA (for Kia vehicles) and HMA (for Hyundai vehicles) shall extend the warranty for 12 years. For Class Members with an expired NVLW as of the date of the Preliminary Approval Order and Class Certification Order, KA and HMA will provide a warranty for 5 years following the date of final approval.

If HMA or KA is unable to repair or replace a Class Vehicle's ABS module due to the unavailability of necessary components, HMA or KA will provide a warranty for the Class Member's Class Vehicle's ABS module to cover future Qualifying Repairs[4] for five (5) years from the date the NHTSA Recall repair or replacement is complete; provided, however, that the Class Member attests that they attempted to get an appointment for the recall repair at an authorized HMA or KA dealer but could not due to parts unavailability. S.A. §§ 2.1.3, 2.1.4.

Under the extended warranty, if a Class Member incurs an out-of-pocket expense, such as for a rental car or towing service, reasonably related to obtaining a Qualifying Repair, the Class Member shall be entitled to full reimbursement. S.A. §

---

[4] Qualifying Repair is any type of repair, replacement, diagnosis, or inspection, including a repair pursuant to a NHTSA Recall, of a Class Vehicle arising from the Qualifying Defect, but excluding Exceptional Neglect, or repairs which occurred after the Notice Date or after the parts necessary to repair the vehicle's ABS module were reasonably available. S.A. § 1.33.

2.6. There is no cap on the amount Defendants must pay for individual reimbursements or in the aggregate for qualified expenses.

Should any disputes about coverage under the warranty occur, they will be resolved through the Better Business Bureau's ("BBB") alternative dispute resolution process. S.A. §§ 2.2.9, 3.3.4. Class Counsel shall have the right to participate in the BBB proceedings. *Id.* All costs and fees associated with the dispute process will be borne by Defendants, excluding a claimant's attorneys' fees. *Id.*

The value of the extended warranty benefit is calculated in the accompanying report of Ms. Thompson, a partner at the economic consulting firm of Hemming Morse. Generally, the value of the extended warranty benefit was derived by using existing prices for Hyundai's and Kia's Platinum Extended Warranties and determining what percentage of the total warranty cost the ABS module represents. Thompson Report at ¶¶ 47-48. Ms. Thompson concluded that the ABS Module represents 6.17% of the value of HMA's and KA's warranty extensions. *Id.* at ¶ 48. Based on this finding, Ms. Thompson concludes that a reasonable estimate for the value of the 5-year warranty extension (for Class Vehicles with expired NVLW) and 7-year warranty extension for Hyundai Class Vehicles (with unexpired NVLW) was $112 and $268, respectively. *Id.* at ¶ 49. For Kia Class Vehicles, the 5-year warranty extension is worth $121, and the 7-year warranty extension is worth $291. *Id.* at ¶ 50. To determine the total value of the warranty extension benefit, Ms. Thompson only multiplied the value of each extended warranty by the number of Class Vehicles that had received the recall repair as of February 27, 2023 (for Kia Class Vehicles) and March 16, 2023 (for Hyundai Class Vehicles), *Id.* at ¶ 53. Ms. Thompson concluded that the total value of the extended warranty is $288,697,701. *Id.* at ¶ 54 (Table 3). Notably, as Class Members continue to receive and review the Class Notice and learn of the Settlement benefits, we anticipate that more Class Members will bring their vehicles in for repair and the value of the extended warranty will increase.

## 2. Free One-Time Inspection of ABS Modules

If a Class Member brings their Class Vehicle into an authorized Hyundai dealership (for Hyundai Class Vehicles) or Kia dealership (for Kia Class Vehicles) for another unrelated service, they may receive a free ABS module inspection, to the extent the ABS module was previously repaired pursuant to a NHTSA Recall, to ensure the ABS module is free from defect. S.A. § 2.3.

Based on the cost of the free one-time inspection provided by Hyundai and Kia,[5] Ms. Thompson was able to value this benefit of the Settlement depending on the percentage of Class members that obtain it.  Thompson Report at ¶¶ 56-57. If only half of eligible Class Members seek to have their ABS modules inspected under this provision, the value of this benefit to the Classes would be $161,389,505. *Id.* at ¶ 59 (Table 4). But even if as little as 20% of Class Members sought to take advantage of this benefit, the value of this benefit would still exceed $64 million. *Id.* Further, like the warranty extension, as more Class Members bring their vehicles in for repair, they will become eligible for the free inspection and the class-wide value of this benefit increases.

## 3. Reimbursement for Past Repairs

Class Members are eligible to receive full reimbursement by HMA (for Hyundai Class Vehicles) or KA (for Kia Class Vehicles) for costs incurred for Qualifying Repairs obtained up to sixty (60) days after the date of final approval. S.A. § 2.5.1. Class members may receive reimbursement regardless of whether the Class Member was an original owner or lessee, or whether the Qualifying Repair was

---

[5] Ms. Thompson relied on certain proprietary information provided by Hyundai and Kia in reaching her valuation conclusions. Because this confidential information is fairly limited and does not prevent disclosure of her ultimate valuation, Plaintiffs' have redacted the confidential information in Ms. Thompson's report by agreement with Defendants, in lieu of filing the report under seal. Should the Court require this redacted information, Plaintiffs will provide the unredacted report for review *in camera*.

1    completed after receiving notification of any applicable NHTSA Recall. *Id*.

2        For reimbursement claims submitted for Qualifying Repairs performed at

3    authorized Hyundai or Kia dealerships, and where Class Members attest that they no

4    longer have receipts or repair documentation, HMA and KA shall take all reasonably

5    available steps to acquire from the dealership the information reasonably necessary to

6    approve the Claim.  S.A. § 2.5.3.

7        Reimbursements shall be provided even if warranty coverage was initially

8    denied for allegedly failing to properly service or maintain the Class Vehicle. S.A. §

9    2.5.5.  Repair reimbursements will be denied if Exceptional Neglect is shown. *Id.*[6] As

10   with the extended warranty, there are no caps on reimbursements for past repairs.

11       Although this benefit provides reimbursements for any repair, replacement,

12   diagnosis, or inspection related to the ABS Module Defect, which may include

13   components beyond the ABS module itself, Ms. Thompson's valuation only accounts

14   for ABS module replacements. Taking the average cost (including parts and labor) of

15   an ABS module repair for the Class Vehicles as provided by Hyundai and Kia, Ms.

16   Thompson again was able to provide a range of value for this benefit depending on

17   what percentage of Class members submit these claims. Thompson Report ¶¶ 61, 63.

18

19   [6] "Exceptional Neglect" means: (a) when the vehicle clearly evidences a lack of
20   maintenance or care, such that the vehicle appears dilapidated, abandoned, and/or
     beyond repair as a result of gross failure to service and/or maintain the vehicle;
21   (b) failure of a Settlement Class Member to present a Class Vehicle to an authorized
     Kia dealer (for Kia Class Vehicles) or an authorized Hyundai dealer (for Hyundai
22   Class Vehicles) to have the ABS Module in their Class Vehicle inspected within
     ninety (90) days of the Class Vehicle's ABS or ESC dashboard warning lights
23   becoming illuminated; or (c) failure of a Settlement Class Member to present a Class
     Vehicle to an authorized Kia dealer (for Kia Class Vehicles) or an authorized
24   Hyundai dealer (for Hyundai Class Vehicles) to have the ABS Module in their Class
     Vehicle inspected, repaired, and/or replaced pursuant to an applicable NHTSA Recall
25   within ninety (90) days of: (i) the Notice Date, (ii) the mailing of the recall campaign
     notice, or (iii) the availability of the parts necessary to repair the Class Vehicle's ABS
26   module pursuant to the recall at the nearest authorized Kia dealer (for Kia Class
     Vehicles) or authorized Hyundai dealer (for Hyundai Class Vehicles), whichever is
27   later. S.A. § 1.12.
28

According to Ms. Thompson, if just 0.5% of Hyundai and Kia Class Vehicles suffered qualified ABS module repairs, this benefit will provide Class Members with $22,017,358 in cash reimbursements. *Id*. at ¶¶ 62, 65. If ABS module reimbursement claims are made concerning 5% of Hyundai and Kia Class Vehicles, though, the benefit will increase to $220,173,578 in cash payments to Class Members. *Id*.

### 4. Reimbursement for Other Repair-Related Expenses

In addition to reimbursements for Qualifying Repairs, Class Members are entitled to full reimbursement of any towing or other out-of-pocket expenses reasonably related to obtaining a Qualifying Repair. S.A. § 2.6.1. Consistent with the other benefits provided in the Settlement, there is no cap on such reimbursements.

### 5. Total Loss of Vehicle Due to Fire

Any Class Member that suffers a loss of the Class Vehicle due to a fire caused by the Defect, prior to ninety days following the availability of the applicable NHTSA Recall remedy or the date of the Final Approval Order and Judgment, whichever is later, or following a repair or replacement of an ABS module pursuant to a NHTSA Recall, is entitled to compensation based upon the maximum Black Book value of the Class Vehicle at the time of loss,. S.A. §§ 2.4.1, 2.4.2.

### 6. Goodwill Payment for Total Loss of Vehicle

In addition to payment based on the maximum Black Book value of the Class Vehicle, if a Class Vehicle experienced a non-collision fire due to the Defect resulting in a Total Loss, the Class Member shall also receive a goodwill payment of $140 from HMA or KA. S.A. § 2.4.5. There is no cap on the aggregate goodwill payments HMA and KA may pay.

### 7. Recall and ABS Module Defect Repairs

Each Class Vehicle is subject to a voluntary safety recall issued by HMA or KA. As part of these NHTSA Recalls, HMA and KA implemented various repairs to ABS modules installed in these vehicles. As part of this settlement, Defendants

represent that these recalls and product improvements represent part of the consideration to the Class. S.A. § 2.7.

### 8.  The Release

The release provided in the Settlement is narrowly tailored to the claims alleged in this litigation S.A. § 1.35. In particular, Class Members shall release claims relating to the ABS Module Defect (referred to as the Qualifying Defect in the S.A.), but they remain free to pursue any other claims relating to their Class Vehicles, and claims relating to the Defect for personal injury or wrongful death, or claims derivative of such claims. *Id*. Moreover, the Settlement specifically provides that any claims that may arise from a future recall, related to the ABS Modules, are not released. *Id*.

### E.    Notice of the Settlement.

Notice to the Class was carried out by HMA and Epiq (on behalf of KA), in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. Fegan Decl., Ex. 2 (Declaration of Elizabeth Fernandez ("Fernandez Decl.")), Ex. 3 (Declaration of Amanda Sternberg ("Sternberg Decl.")). In total, 7,006,272 first-class mail notices were sent out to Class Members. Fernandez Decl. ¶ 6; Sternberg Decl. ¶ 11. Email notice, containing a copy of the Class Notice in the body of the email and links to the settlement website and the claims administrators' phone numbers, was sent to 3,265,297 email addresses. Fernandez Decl. ¶ 8; Sternberg Decl. ¶ 13. The Claims Administrators also established Settlement-dedicated phone lines to field Class Member inquiries regarding the Settlement. Fernandez Decl. ¶ 4; Sternberg Decl. ¶ 4. Epiq launched Kia's settlement website (KiaHECUSettlement.com) on or about February 16, 2023, and HMA launched its settlement website (HyundaiHECUSettlement.com) on or about January 27, 2023. Sternberg Decl. ¶ 3; Fernandez Decl. ¶ 3.

1  The Objection and Opt-Out deadline is set for April 4, 2023. Plaintiffs'

2  response to any objections is due April 18, 2023. Dkt. 130 ¶14. With their response,

3  Plaintiffs will provide the Court with the number of objections and identification of

4  class members who have requested exclusion. Under the terms of the Settlement,

5  Class Members who do not opt out have until at least July 7, 2023, to submit claims

6  for reimbursements. As of filing, no Class Member has objected to the Settlement.

7  **III.    ARGUMENT**

8      **A.    <u>The Court Should Reaffirm its Certification of the Settlement Classes.</u>**

9      The Court certified the two Classes for settlement purposes upon Preliminary

10  Approval, finding that requirements under Rule 23(a) and Rule 23(b)(3) are satisfied.

11  Dkt. 130 at 4. Nothing has changed that would affect the Court's ruling on class

12  certification. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016)

13  (reconfirming the certification set forth in the preliminary approval order "[b]ecause

14  the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel*

15  *Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the

16  criteria for class certification "differently in litigation classes and settlement

17  classes"). Accordingly, the Court should grant final certification of the settlement

18  Classes.

19      **B.    <u>The Settlement is Fair, Reasonable, and Adequate.</u>**

20      As the Court noted when granting preliminary approval, "[t]here is a 'strong

21  judicial policy' favoring settlement of class actions." Dkt. 130 at 5 (quoting *Class*

22  *Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

23      Final approval of a class action settlement asks the court to "evaluate the

24  fairness of a settlement as a whole," and find that the settlement is "'fair, reasonable,

25  and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012)

26  (quoting Fed. R. Civ. P. 23(e)(2)); *id.* at 819 ("the question whether a settlement is

27  fundamentally fair within the meaning of Rule 23(e) is different from the question

28

whether the settlement is perfect in the estimation of the reviewing court."). In the Ninth Circuit, courts consider the following non-exhaustive factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* (citations omitted). No one factor is decisive or even necessarily appropriate for consideration in every class action settlement. *Miller v. Wise Co.*, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020). Rather, "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." S*taton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Where, such as here, a settlement is reached prior to formal class certification, the Court is to consider whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

### 1.  The Strength of Plaintiffs' Case

Plaintiffs allege that Defendants sold the Class Vehicles with defective ABS Modules that can short circuit and cause spontaneous engine compartment fires. Plaintiffs contend that this safety-related defect can manifest in the Class Vehicles at any time. Based upon their extensive pre-suit investigation and evidence produced during discovery, Plaintiffs were prepared to present evidence that Defendants had knowledge of the ABS Module Defect before the Class Vehicles were sold to the public, and that instead of disclosing the defect as the law obligates, Defendants

concealed the defect. If the litigation had proceeded, Plaintiffs believe that they could demonstrate that Defendants violated state consumer protection laws, breached their express and implied warranties, and engaged in fraud.

Despite their confidence in the strength of their claim, Plaintiffs recognize the considerable risks inherent in litigation and unique difficulties presented by the facts at issue here. Fegan Decl. ¶ 70; Berman Decl. ¶ 15. Among other defenses, Defendants would argue that the Class Vehicles are not defective, the majority of Class Vehicles have not experienced a manifestation of the Defect, and even if the Defect did exist, they did not have pre-sale knowledge of its existence. Moreover, Defendants would raise a significant opposition to class certification. In this effort, Defendants would argue that the Class is comprised of dozens of vehicle models, with different ABS Modules, and class certification, particularly for a nationwide class, is not appropriate.

## 2. The Risk, Expense, Complexity, and Duration of Further Litigation

"This case has been ongoing for more than two years and has included the exchange of substantial amounts of information between Plaintiffs and Defendants, several rounds of dispositive motions...." Dkt. 130 at 5. Despite Plaintiffs' success thus far in the litigation, the path forward remains long and highly uncertain. At the time the settlement discussions began, Plaintiffs were preparing to file their class certification motion. But there was much more work to be done, including completion of discovery (which was the subject of a comprehensive motion to compel), expert discovery, and *Daubert* challenges. The class certification motion would have sought certification of a nationwide class under California law, in addition to individual state classes, comprised of dozens of vehicle models, produced over a two-decade period.

Even if Plaintiffs were able to withstand the challenges to class certification, the path to trial (and ultimately, provide the class members with relief) was far away. Defendants would have almost certainly sought a Rule 23(f) appeal. If the 23(f)

petition was granted, the case may have been stayed pending the appeal, thereby
extending the case by over a year. When the case did proceed, the parties would have
still had to brief summary judgment and conduct related expert work, leading to a
trial date sometime in mid-2024. Moreover, by the time Plaintiffs' claims are
presented to a jury, many more Class Members will have sold their vehicles, losing
the benefit of the extended warranty, and continue to suffer the burden of
unreimbursed expenses and compensation for Total Loss vehicles.

Through this Settlement, Class Members can avoid the meaningful risks and
expenses posed by continued litigation and enjoy the guaranteed benefits of the
Settlement in an expeditious manner, designed to maximize the benefits. *See
Barragan v. Populus Fin. Grp., Inc.*, No. 2:21-cv-08021-SB-MRW, Dkt. 38, 2023
U.S. Dist. LEXIS 27605, at *8 (C.D. Cal. Feb. 10, 2023) (Blumenfeld, J.) ("An
immediate recovery for class members is preferable to prolonged risk and expense of
further litigation."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.
523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly
inadequate, its acceptance and approval are preferable to lengthy and expensive
litigation with uncertain results."); *Ruiz v. JCP Logistics, Inc.*, 2016 WL 6156212, at
*5 (C.D. Cal. Aug. 12, 2016) ("Settlement eliminates the risks inherent in continued
litigation, and it may be the last chance for class members to obtain relief."); *Conti v.
Am. Honda Motor Co.*, No. CV 19-02160-CJC (GJSx), Dkt. 99, 2022 U.S. Dist.
LEXIS 1561, at *30 (C.D. Cal. Jan. 4, 2022) ("At this point in the case, the parties
have a clear view of the strengths and weaknesses of their positions given that
Defendant has already filed two motions to dismiss and the Court granted one with
respect to several of Plaintiffs' claims, indicating potential weaknesses in the
allegations.").

### 3.  Risk of Maintaining a Class Action Throughout Trial

There is a substantial risk that Plaintiffs would not be able to maintain a

---

17

nationwide class, as provided in the Settlement, through trial. First, Defendants maintain that the Class Vehicles are not defective. Second, Defendants would argue that even if there is a Defect in the Class Vehicles, the Defect is not uniform across all Class Vehicles. If the Court were to grant class certification, Defendants would likely file a 23(f) petition and motions to decertify the classes. Given these facts, there is a substantial chance that a class could not be maintained through trial. *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *12 (C.D. Cal. Dec. 21, 2017) ("The uncertainty surrounding class certification favors approval of the Settlement here, especially 'because settlement was reached prior to a hearing on Plaintiffs' motion for class certification . . . a time when there was still risk that the class would not be certified by the Court.'") (quoting *Chambers*, 214 F. Supp. 3d at 888–89).

### 4. The Amount Offered in the Settlement

The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted).

Here, "the benefits Class Members will receive are proportionate to the harm they suffered" and "targeted to the injuries Class Members allegedly suffered." Dkt. 130 at 6. Class Members that still posses their Class Vehicles are entitled to a remedy for the ABS Module Defect, an extended warranty, a free module inspection, and reimbursement for prior Defect related expenses. Based on Plaintiffs' conservative estimates, these benefits have a minimum value to consumers of $326,823,515 which may exceed $669 million, and do not even include aspects of the Settlement that could not be valued without more information, including claims data. Thompson Report at ¶ 69.

Class Members that suffered out of pocket expenses related to the Defect, including inspection fees and rental car expenses, are entitled to ***full*** reimbursement

for past expenses. If the Defect caused a Total Loss of a Class Vehicle, a Class Member is entitled to maximum Black Book compensation, plus a goodwill payment of $140. Further, in the event a dispute arises between Defendants and a Class Member, the Settlement offers a BBB-administered alternative dispute resolution, with the costs to be borne by Defendants. Put simply, the Settlement offers Class Members virtually everything Plaintiffs hoped to recover through the litigation.

Moreover, no group of Class Members is favored over any other in the Settlement and all Class Members may qualify for each form of compensation offered. *See* Dkt. 130 at 6. Multiple elements of relief and compensation are offered to Class Members that reflect the varying degrees to which they were harmed or suffered losses due to the defect. *See, e.g., Conti*, 2022 U.S. Dist. LEXIS 1561, at *47 (granting final approval where "[t]he Settlement Agreement… strikes an appropriate balance among the various ways Class Members may have suffered because of the defects[.]").

### 5. Extent of Discovery and Stage of the Proceedings

This factor asks to the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, "[t]his case has been ongoing for more than two years and has included the exchange of substantial amounts of information between Plaintiffs and Defendants, several rounds of dispositive motions, and extensive negotiations." Dkt. 130 at 5. Plaintiffs' counsel devoted substantial time to investigating the underlying facts and developing the factual and legal allegations. In addition to conducting extensive pre-suit investigations, the parties conducted extensive discovery in the form of interrogatories, relating to, *inter alia*, the design and manufacturing of certain Class Vehicles, technical service bulletins relating to the Defect, the causes of the safety risks created by the Defect, and repairs necessary to remove the risk of engine

compartment fires in the ABS modules. Fegan Decl. ¶¶ 20-21. Plaintiffs also reviewed thousands of pages of documents produced by Defendants and Mando America Corp ("Mando"), a supplier of ABS modules installed in certain Class Vehicles. Fegan Decl. ¶¶ 22, 24, 46-48, 52; Berman Decl. ¶ 8. In addition to the written and documentary discovery, Plaintiffs conducted 30(b)(6) depositions before the Settlement was reached, as well as after, through confirmatory discovery. Fegan Decl. ¶¶ 33, 50-51, 54; Berman Decl. ¶¶ 10, 12.

Based on this work over the course of more than two years, Class Counsel had a deep understanding of the strength of their case, which allowed the parties to have "serious, informed" negotiations. Dkt. 130 at 6. *See In re Mego*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" even though formal discovery had not been completed because Class Counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services"); *Hardmon v. Ascena Retail Grp., Inc.*, 2022 WL 17572098, at *5-6 (C.D. Cal. Nov. 29, 2022) (finding this factor supported final approval even where the docket did "not reflect vigorous litigation" but plaintiffs' counsel "conducted extensive research and assessed the documents that were exchanged informally").

### 6.  The Experience and Views of Counsel

As the Court previously recognized, "Class Counsel have substantial experience in bringing successful class action lawsuits." Dkt. 130 a 4. Class Counsel believes that the Settlement offers an excellent result for the Class. Fegan Decl. ¶ 70; Berman Decl. ¶¶ 4-5. *See Hardmon*, 2022 WL 17572098, at *6 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." (citation omitted)).

### 7.  The Presence of a Governmental Participant

There is no governmental participant involved in this litigation. This factor is

1  therefore inapplicable. *E.g.*, *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at * 7

2  (N.D. Cal. Jan. 23, 2017).

3  ### 8.  The Reaction of the Classes

4  It is premature to consider this factor. The deadline for objecting is April 4,

5  2023. While Class Counsel has not received any objections to date, Class Counsel

6  will respond to any objections should they be lodged prior to the deadline of April 4,

7  2023. At this stage, this factor is neutral.

8  ### 9.  The Settlement is Not the Product of Collusion

9  Collusion among settling parties can be found explicitly or in "more subtle

10 signs that class counsel have allowed pursuit of their own self-interests and that of

11 certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Subtle

12 signs of collusion include (1) "when counsel receive a disproportionate distribution of

13 the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement

14 providing for the payment of attorneys' fees separate and apart from class funds," and

15 (3) "when the parties arrange for fees not awarded to revert to defendants rather than

16 be added to the class fund." *Id.* (internal citations and quotation marks omitted). A

17 mediator's involvement in the settlement supports the argument that a settlement is

18 non-collusive. *Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *7

19 (C.D. Cal. Apr. 17, 2015) (citing *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at

20 *4 (N.D. Cal. Apr. 13, 2007)).

21 Here, the Settlement was reached after multiple mediation sessions with Hon.

22 Edward A. Infante. Moreover, the Settlement does not include a clear sailing

23 provision. *See* S.A. § 14; Fegan Decl. ¶ 58; Berman Decl. ¶ 19. After reaching

24 agreement on the benefits to be provided to the Classes, the parties agreed that Class

25 Counsel would file their motion for fees and costs in an "open and transparent

26 process," which Defendants can oppose at any level. S.A. §§ 14.2, 14.3. The

27 Settlement protects the Classes' interest by providing that the fee is ordered by the

28

Court shall be separately paid by Defendants and shall not reduce the benefits provided to the Classes. S.A. § 14.3. Finally, Class Counsel seek fees and expenses of $8,696,551.50, which is approximately 3.01% of the value of the warranty extension benefit alone. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *13 (C.D. Cal. Feb. 16, 2017) (finding Plaintiffs' requested fees equal to approximately one-half the net recovery to the Class Members "does not suggest collusion."); *Contreras v. Armstrong Flooring*, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021) ("the Court is not concerned about collusion based on Class Counsel's fee request" equal to 25% of settlement fund). In sum, "the Amended Settlement Agreement is the product of serious, informed, non-collusive negotiations." Dkt. 130. at 5. *See Banh v. Am. Honda Motor Co*., 2021 WL 3468113, at *6 (C.D. Cal. June 3, 2021) (no evidence of collusion where there was no clear sailing provision, "attorneys' fees will not diminish the benefits awarded to class members," and the settlement was reached after numerous mediations).

## C.   Direct Notice was Given to All Class Members in a Reasonable Manner.

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (Rule 23(c)(2)(B) "does not necessarily require that every in-state class member 'actually receive[]' notice." (quoting *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994)). As to the contents of the notice, it must "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse

viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted).

The Court previously recognized that the Notices proposed by the parties "disclose information sufficient to alert class members about the alteration of their rights, the content of the notices satisfies due process." Dkt. 130 at 70 (citing *Churchill*, 361 F.3d at 575). As discussed *supra* § II.E., the Claims Administrators substantially implemented the Class Notice plan, by providing notice through U.S. mail, email, and dedicated settlement websites. Accordingly, all Class Members have an opportunity to opt-out or object and appear at the Fairness Hearing, and therefore, the notice plan satisfies Rule 23 and comports with due process.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the final approval of the Settlement.

Dated: March 20, 2023          By:  */s/  Elizabeth A. Fegan*
                                    Elizabeth A. Fegan (*pro hac vice*)
                                    FEGAN SCOTT LLC
                                    150 S. Wacker Dr., 24th Floor
                                    Chicago, IL 60606
                                    Phone: 312.741.1019
                                    Fax: 312.264.0100
                                    beth@feganscott.com

                                    Jonathan D. Lindenfeld (*pro hac vice*)
                                    FEGAN SCOTT LLC
                                    140 Broadway, 46th Floor
                                    New York, NY 10005
                                    Phone: 332.216.2101
                                    Fax: 312.264.0100
                                    jonathan@feganscott.com

                                    Steve W. Berman (*pro hac vice*)
                                    Thomas E. Loeser (SBN 202724)
                                    HAGENS BERMAN SOBOL SHAPIRO LLP
                                    1301 Second Avenue, Suite 2000
                                    Seattle, WA  98101

1
2

Telephone:  (206) 623-7292
E-mail: steve@hbsslaw.com
E-mail: toml@hbsslaw.com

3
4
5
6
7

Rachel E. Fitzpatrick (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ  85003
(602) 840-5900
E-mail: rachelf@hbsslaw.com

8
9
10
11
12

Jonathan M. Jagher (*pro hac vice*)
FREED KANNER LONDON & MILLEN LLC
923 Fayette Street
Conshohocken, PA  19428
Telephone:  (610) 234-6487
E-mail:  jjagher@fklmlaw.com

13
14
15

Katrina Carroll (*pro hac vice*)
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
E-mail: katrina@lcllp.com

16
17
18
19

Todd D. Carpenter
Lynch Carpenter LLP
1350 Columbia Street, Suite 603
San Diego, CA  92101
Telephone:  (619) 762-1910
E-mail: todd@lcllp.com

20
21
22
23
24

Jennifer A. Lenze, CA Bar # 246858
LENZE LAWYERS, PLC.
1300 Highland Avenue, Suite 207
Manhattan Beach, CA 90266
Telephone: (310) 322-8800
Facsimile: (310) 322-8811
jlenze@lenzelawyers.com

25
26
27
28

J. Barton Goplerud (*pro hac vice*)
SHINDLER, ANDERSON, GOPLERUD & WEESE PC
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567

24

1

E-mail: goplerud@sagwlaw.com

2

Rosemary M. Rivas

3

David Stein
Rosanne L. Mah

4

GIBBS LAW GROUP LLP
505 14th Street, Suite 1110

5

Oakland, CA 94612
Telephone: (510) 350-9700

6

Facsimile: (510) 350-9701

7

rmr@classlawgroup.com
ds@classlawgroup.com

8

rlm@classlawgroup.com

9

*Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.:  8:20-CV-01584-SB-JDE