1
2

Paul S. Rothstein (*pro hac vice pending*)
626 N.E. First Street
Gainesville, Florida 32601
Tel: (352) 376-7650
Fax: (352) 374-7133
PSR@Rothsteinforjustice.com

Jeffrey Spitz (SBN 119343)
Spitz Law Group
11835 W. Olympic Blvd., Ste. 600E
Los Angeles, CA 90064
Tel: 424-273-1126
Fax: 424-273-1119
jspitz@spitzlawgroup.com

3
4
5
6
7
8
9
10
11

*Attorneys for Objector/Proposed Intervenor, Michael Graham*

12
13

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

14
15

| | | |
|---|---|---|
| RAMTIN ZAKIKHANI, et al., | ) | Case No.: 8:20-cv-01584-SB-JDE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Judge: |
| | ) | Honorable |
| HYUNDAI MOTOR COMPANY, | ) | Stanley Blumenfeld Jr. |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

16
17
18
19
20
21
22
23
24
25
26
27
28

OBJECTOR/PROPOSED INTERVENOR'S OBJECTIONS TO THE ZAKIKHANI, ET AL. V. HYUNDAI
MOTOR COMPANY, ET AL. PROPOSED SETTLEMENT AGREEMENT AND NOTICE OF INTENT TO
APPEAR THROUGH COUNSEL
CASE NO. 8:20-CV-01584-SB-JDE
PAGE- 1

**OBJECTOR/PROPOSED INTERVENOR'S OBJECTIONS TO THE
ZAKIKHANI, ET AL. V. HYUNDAI MOTOR COMPANY, ET AL.
PROPOSED SETTLEMENT <u>AGREEMENT AND NOTICE OF INTENT TO
APPEAR THROUGH COUNSEL</u>**

Objectors/Proposed Intervenor, Michael Graham, absent class member, objects to the Preliminarily Approved Settlement Agreement ("Settlement Agreement") in good faith and states:

1. Objector/Proposed Intervenor, Michael Graham, is a Hyundai class member and intends to appear at the Fairness Hearing through counsel.

2. Objector/Proposed Intervenor has disclosed all information relevant to his objections pursuant to *Order Granting Plaintiffs' Motion For Preliminary Approval of Class Action Settlement* [Doc. 130]. See Declaration of Michael Graham attached as Exhibit A.

3. Counsel for Objector/Proposed Intervenor intend to appear at the Fairness Hearing on behalf of Objector/Proposed Intervenor and have disclosed all information relevant to the objections pursuant to *Order Granting Plaintiffs' Motion For Preliminary Approval of Class Action Settlement* [Doc. 130]. See Declarations of Paul S. Rothstein and Jeffrey Spitz attached as Exhibits B and C respectively.

## **OBJECTIONS**

The proposed Settlement is inadequate, unfair, misleading, and unreasonable for the following reasons:

1.  Section 2.3 of the Settlement Agreement, "Free One-Time Inspection", is unreasonably ambiguous, misleading, and deceptive: The clause specifies that the free inspection is available if the Class Vehicle's ABS Module was "previously repaired or replaced pursuant to a NHTSA Recall." However, the definition of a "Qualifying Repair" encompasses a broader range of repairs, replacements, diagnoses, or inspections. This discrepancy creates ambiguity as to whether the free inspection is available only to those who have had a repair or replacement under a NHTSA Recall or if it extends to those who have had any type of Qualifying Repair. The clause should be clarified to eliminate this confusion and ensure that the Settlement Class Members understand their eligibility for the free inspection.

2.  Section 2.3 of the Settlement Agreement, "Free One-Time Inspection", is misleading and deceptive with respect to the use of the word "free":

The clause states that the inspection is "free," but it is contingent upon
the Settlement Class Member bringing their Class Vehicle to an
authorized dealership for an unrelated service. By conditioning the
free inspection on an unrelated service, the clause misleads the absent
class member, as the cost of that unrelated service is both unknown
and may easily leave the absent class member feeling ensnared in a
bait and switch ruse.   Furthermore, the term "free" has meaning that
is universal and connotes  having no obligation, no consideration, no
anything in return; simply receipt of service or good without giving up
any barter.  "Free with conditions" is an oxymoron rendering "Free"
inoperative.  Here, the term "free" in the Notice and all related
documents appears to the typical absent class member as
unconditional and presents the false impression that the inspection is
readily available without any additional costs or requirements.  The
qualifying words "subject to certain conditions", in the Notice and the
Settlement Website[1], fail to adequately counteract the "bait and
switch" inducement that the language creates.  The appropriate

_____

[1] Kia HECU Settlement - Home (Page-url hyperlink)

language representative of the concept conveyed would be: If you bring in the vehicle for an unrelated repair, you will receive a free inspection.

However, this language -- although clear and unambiguous -- guts the objective of the proposed settlement:   to motivate absent class members to have their vehicles inspected is to have defective vehicles removed from the road for safety reasons; not to generate more business for Hyundai.  .

The remedy is to strike 'with certain conditions' and have the relevant language read :  FREE.

The "Free One-Time Inspection", as constructed and agreed to by the parties in this case, is in fact a mechanism to generate business for Defendants and their authorized dealerships' service centers.

3. Section 2.3 of the Settlement Agreement, "Free One-Time Inspection", is unreasonably limited to service from authorized dealerships:

The requirement that the inspection must be conducted at an authorized Hyundai or Kia dealership may be burdensome for Settlement Class Members who do not typically use such dealerships

for their vehicle services. This requirement could create additional costs and inconvenience for those who must seek out an authorized dealership solely to receive the "free" inspection. This limitation effectively makes the inspection not "free" for individuals who routinely use independent automobile repair and service shops for regular car maintenance.

In that the owner potentially has to pay for the unrelated service to obtain the free inspection, use of the word "free" is a blatant misrepresentation.

4. Section 2.3 of the Settlement Agreement, "Free One-Time Inspection", does not provide reasonable clarity as to the scope of the "free" inspection:

The clause does not clearly define what the inspection will entail, what criteria will be used to determine whether the ABS Module is affected by the Qualifying Defect, and what steps will be taken if the inspection reveals an issue. Without clear guidelines for the inspection process, the value of the free inspection for Settlement Class Members is suspect.  Further, this settlement does not provide class members with reasonable and fair assurances that the defect will be properly

addressed  and remedied should the inspection confirm deficiencies requiring repairs.  Section 2.3 of the Settlement Agreement, "Free One-Time Inspection", has also been misrepresented to class members in the *Notice of Proposed Class Action Settlement* ("Notice") and on the Settlement Website[2]:

On page 1 of the Notice, it states that "[t]he Settlement also provides a free one-time ABS Module inspection, subject to certain conditions", without further reference to what those "conditions" are, nor where class members can find those "conditions". Not until page 6 of the Notice are the "conditions" of the "free" inspection ambiguously expanded upon, as in the Settlement Agreement. The language wholly fails to provide absent class members with reliable language that affords them the opportunity to decide whether to remain in the class, opt out of the class or raise an objection because they did not realize the language mislead them to believe that the benefit was not what they reasonably thought it was.

---

[2] Kia HECU Settlement - Home

The Settlement website is even more duplicitous. The Settlement website plainly displays the benefits of the Settlement for class members on the home page; among which is their entitlement to a "Free One-Time Inspection: A free one-time ABS Module inspection, subject to certain conditions." However, the page fails to expand on those "conditions", nor even provide class members a hyperlink that would lead class members to an explanation of said "conditions." Objectors/Proposed Intervenors object to the manner by which this "benefit" has been published and described to class members. It is patently misleading, ambiguous and plainly wrong.

5.  The Court should amend Section 2.3 of the Settlement Agreement, "Free One-Time Inspection", for the benefit of class members: Objectors/Proposed Intervenors petition the court to amend the language of Section 2.3 of the Settlement Agreement and remove the "unrelated service" condition and expand the "previously repaired or replaced" requirement to include all "Qualifying Repair[s]" as defined in Section 1.33 of the Settlement Agreement. Objectors/Proposed intervenors believe these changes will alleviate the ambiguity of

Section 2.3 and further ensure that the "Free One-Time Inspection" is in fact a "free" inspection.

6. Section 1.35, "Released Claims", is unreasonably broad in scope: Section 1.35 defines "Released Claims" to include not only claims arising out of the Qualifying Defect in a Class Vehicle but also "all claims for out-of-pocket expense, diminution-in-value, benefit-of-the-bargain, cost-of-repair, cost-of-replacement, cost-of-maintenance, consequential damages, property damage to the Class Vehicle, or premium-price damages, arising out of the Class Member's purchase or lease of a Class Vehicle." This language is broad and could be interpreted to release the defendants from claims beyond the issues specifically addressed in the class action lawsuit. The unreasonably broad language could lead to class members unintentionally releasing the defendants from liability for other issues that were not part of the original lawsuit or settlement negotiations.

7. Section 1.35, "Released Claims", is unreasonably ambiguous: The definition of "Released Claims" in Section 1.35 is ambiguous because it encompasses a wide range of claims "arising out of the Qualifying Defect" without specifying the exact nature or scope of

these claims. For example, it is unclear whether the release applies

only to claims related to the ABS module, or if it also extends to

claims related to other components that may be affected by the

Qualifying Defect. This ambiguity could cause confusion among class

members, who may not fully understand the extent of the claims they

are releasing.

8.  Sections 8.2 and 8.3 of the Settlement Agreement potentially releases

unrelated claims:

Sections 8.2 and 8.3 of the release agreement contain waiver and

release language that could potentially release claims that are not

directly relevant to the current class action lawsuit. By waiving and

releasing rights and benefits conferred by various laws and principles,

class members may inadvertently release the defendants from liability

for claims that were unknown or unrelated to the issues at hand. This

could result in class members being unable to seek redress for claims

that are outside the scope of the current action but are still connected

to the defendants' conduct.

9.  Section 1.35, "Released Claims", is unreasonably ambiguous as to the

scope of the exclusion of certain claims:

While Section 1.35 states that "Released Claims" do not include claims for damage to property other than the Class Vehicle itself, subrogation, personal injury or wrongful death, or claims derivative of such claims, the language in this exclusion is not sufficiently clear to provide class members with a comprehensive understanding of the types of claims that are not released under the settlement agreement. This lack of clarity could lead to confusion and disputes about the scope of the release.

10. Considering the nature of the Defect, a "One-Time" inspection is not sufficient to monitor on-going and underlying problems and liability at issue in this case:

Objector/Proposed Intervenor, Michael Graham, in his declaration (Attached as Exhibit A), (noting his 40 years of experience in commercial nuclear reactor power generation, and extensive training and experience in construction, maintenance and testing of reactor control and protection systems to monitor core activity, providing indications of the parameters required to ensure the safety of the public) has articulated the need for recurring and ongoing monitoring of the Defect to ensure public safety.

Objectors/Proposed intervenors have identified nine[3] NHTSA Part 573 Safety Recall Reports (Attached as Exhibit D) included in the Vehicle classes of this case that in the "Description of the Defect" section use language that underscores the ongoing risk to the public and nature of the Defect. "Due to suspected supplier quality deviation issue, brake fluid may leak internally inside the Hydraulic Electronic Control Unit (HECU) which, **over time**, can result in an electrical short circuit." (21V-331)(Emphasis added) "The subject vehicles are equipped with Anti-lock Brake System ("ABS") modules that could leak brake fluid internally and cause an electrical short **over time.**"(21V-303)(Emphasis added) "The subject vehicles are equipped with Anti-lock Brake System ("ABS") modules that could corrode internally and cause an electrical short **over time**, resulting in an engine compartment fire." (20V-543)(Emphasis added) "Due to suspected supplier quality deviation issue, brake fluid may leak internally inside the Hydraulic Electronic Control Unit (HECU) which **overtime**, can result in an electrical short.

---

[3] 18V-026, 20V-061, 20V-519, 20V-520, 20V-543, 21V-160, 21V-161, 21V-303, 21V-331

An electrical short in the HECU increases the risk of an engine compartment fire while driving." (20V-519)(Emphasis added) These nine Part 573 Safety Recall Reports provided by NHTSA affect 2,022,313 Class Vehicles.

Further, considering that both independent ABS part manufacturers and Defendants have been "unsuccessful in determining an exact root cause"[4] of the Defect, this court should recognize the ongoing nature of the Defect.  As a result, this Court should insist on a schedule of inspections over time to assure the safety of absent class members and the public. The current response rate by absent class members is insufficient to assure public safety with respect to the Defect:

As it stands, the settlement has generated an insufficient   response rate from the affected class members, which is inadequate to ensure that all eligible individuals have had their vehicles inspected and repaired where necessary.

To improve the response rate and ultimately achieve a more just outcome, Objectors/Proposed Intervenors propose that the Court

---

[4] See Recall 195 Attachment A (Amended) (Attached as Exhibit E)

implement a sweepstakes incentive for class members, similar to the one successfully employed in the Takata Airbag Products Liability Litigation, as detailed in the *Report by the Settlement Special Administrator on the Implementation of the Outreach Programs Pursuant to the BMW, Ford, Honda, Mazda, Nissan, Subaru, and Toyota Settlement Agreements* (Doc. 3929)(Attached as Exhibit F). The Takata Airbag Litigation's "Ford Repair & WIN" sweepstakes offered consumers who had their vehicles repaired within contest rules the opportunity to win numerous prizes, including a new Ford Mustang GT or Ford Ranger 4x4, one of three vacation packages valued at over $10,000, and many others. This incentive proved to be successful, with a 7% increase in repairs for the targeted vehicle population during the course of the sweepstakes, as compared to the period before.

The implementation of a sweepstakes incentive in the current litigation is likely to have a similar positive effect on the response rate, encouraging more class members to participate in the settlement and ensuring that they receive the compensation and remedies they are entitled to. The sweepstakes would not only generate interest among

class members, but also serve to re-engage those who may have been

unresponsive or skeptical of the initial communications.

In light of the success demonstrated in the Takata Airbag Litigation,

we respectfully request that the Court consider the implementation of

a similar sweepstakes incentive for this Settlement. This would not

only improve the response rate, but also help ensure that all eligible

class members are properly informed, engaged, and fairly

compensated for their damages.

WHEREFORE, Objector/Proposed Intervenor seeks the following relief:

A.  Find that the Objections filed in this pleading should be sustained and are

meritorious;

B.  That the proposed settlement and requested relief as currently proposed

should be rejected;

C.  Require the Parties to modify and amend the Settlement Agreement to

satisfy the objections in this pleading including:

1. Require a new notice campaign that is unambiguous and

presents a genuine free inspection;

2. Require multiple inspections over time to assure that the

defect does not manifest and create tragedy; and

3.  Implement other programs like those suggested in these objections that increase the number of absent class members who bring their vehicles to be inspected;

D.  Grant Objectors/Movants intervention, permitting focused discovery including but not limited to all pertinent documents in regards to the ongoing nature of the Defect and calculation of the benefits for class members;

E.  Adopt and incorporate all other objections that are meritorious and not inconsistent with these objections.

F.  Grant all other relief that this Court deems just and appropriate, including but not limited to awarding Objector/Proposed Intervenor costs and attorney fees for providing substantive, meritorious work in regards to these proceedings.

Dated April 3rd, 2023          Respectfully submitted,

Paul S. Rothstein, P.A.

/s/ Paul S. Rothstein
Paul S. Rothstein (*pro hac vice pending*)
626 N.E. First Street
Gainesville, Florida 32601
Tel: (352) 376-7650
Fax: (352) 374-7133
PSR@Rothsteinorjustice.com

Jeffrey Spitz (SBN 119343)
Spitz Law Group
11835 W. Olympic Blvd., Ste. 600E
Los Angeles, CA 90064
Tel: 424-273-1126
Fax: 424-273-1119
jspitz@spitzlawgroup.com

*Attorneys for Objector/Proposed Intervenor*

## **CERTIFICATE OF SERVICE**

_X_ **By Electronic Service**: by causing a true and correct copy thereof to be transmitted electronically to the attorney(s) of record in this action via electronic service provider (Case Anywhere).

Executed on April 3rd , 2023,

/s/Paul S. Rothstein
Paul S. Rothstein