

**April 18,2023**

To-Honorable Judge Stanley Blumenfeld, Jr.

c/o Clerk of Court

First Street U.S. Courthouse

350 W 1st Street
,
Suite 4311

Los Angeles, CA 90012-4565

Your Honor

May it please the court.

I Walter Leen, age 80 ,retired New York State Auditor , filed good faith Objection ECF 147 on this case. This submission had multiple purposes;

As no guidance has been posted on the docket at this stage as to the availability of a Zoom or phone opportunity for me to attend the April 21st hearing, this submission serves multiple purposes:

It serve to document the additional supporting information , case references and calculations, I plan to present on April 21st .

As class counsel has not yet posted it routine reply to objections which is due later today , I am submitting this to offset any negative that may be in that counter while using enough measured wording to not reject any concession that Class Counsel may include.

There are only two Objection on file at this time and both present different Objection points and both overlap on the apparent inadvertent misrepresentations although the two Objections differ as to the root cause of the apparent misrepresentation being inadvertent or otherwise. Still in either case corrective action is imperative.

Lastly, I am now surfacing a mild Objection on the incentive awards that have been recommended by class counsel for the named lead plaintiffs represented which has a April 19th deadline for submission. My specific justification is detailed in the DISCUSSION section below. I do not question the class counsel's legals fee request.

## CASES CITED

Klee vs Nissan North American 2:12-cv-08238 AWT- PJW

In CD- CA  9  ( No appeal possible )

Halcom vs Genworth 3:21-cv-00019 ED VA ( No appeals)

*Johnson v. NPAS Solutions LLC*, No. 18-12344, (11th Cir. Aug. 3, 2022).

## DISCUSSION

In support of the first settlement improvement recommendation in my Objection concerning the merits of providing some level of relief to all class members that received Notice, I believe I have identified two cases that have persuasive value . Neither have official precedent's but the stronger case is a just a razor thin measure of the standard and the other is 3000 miles off, The first case is also an automotive cases as well as a "home " case settled in this court in part because it was inappropriate to have an Appeal.

The first case in Klee vs Nissan North American 2:12-cv-08238-AWR-PJW in CD-CA and it would not be incorrect to state that the final outcome was the will of the then Chief Appeal Judge of the 9th Circuit.

Therefore, it surely come as a persuasive heavyweight punch of the most qualified Objector to ever litigate in this courtroom as of that period.

It involved misrepresentations and the Objectors victory was so complete and total that it seems to have "squared the circle" and serve as a textbook example of what can be accomplished by a good faith Objector.

Interestingly, I was unaware of the case when I submitted my Objection and only learned about it when I watched a You Tube video that included

the Objectors version of the event. When former Ninth Circuits Chief Appeal Court Judge ALEX KOZINSKI mentioned that that the cases would have more balanced decision if an Auditor was involved, I felt compelled to study that case to improve my performance on this case.

The Objector may well have been viewed as a "disruptor' before that concept was in vogue as he was ubiquitous in challenged the parties. The settlement was significantly improved by meaningful corrective action that shows up in the monetary results. However, it was the judges final opinion in Docket ECF 170 page 16 that is the key takeaway that I bring to this courts attention, The Judge states," ==Furthermore, because all former owners and lessees are entitled to $50, no class member is left empty-handed by the settlement==."

That being said the Klee RELEASE was not challenged nor should it have been because there was consideration provided to all Class members versus this Zakikhani case where approximately 2,850,000 former owners are left empty handed.

In Klee the consideration to the former vehicle owners was $50 which was not unreasonable in individual amount or class total because the class size was only 19332 and the administrative cost would not have been significant or a waste of funds on envelopes and stamps. On this Zakikhani and most other class action it is difficult to place a value on the RELEASE but it is clear that all defendants value the protections from the unknown that the Release provides. The same can be said of an audit clause in a major contact which is the key to the audit equivalent of Discovery .

**Zakikhani V Hyundai /Kia 8:20-cv01584 CD CA**

Before I present that second and less persuasive case, Halcom v Genworth 3:21-cv-00019 ED VA, I would like to refer to an article in the National Law Review on February 23,2021 titled, "Cutting to the Chase: The Relief, the Release and the Rest."which is attached as Exhibit A

The article is very straightforward but it makes it clear each bench has its own agenda but the key line states, "***The bottom line for the defendant when settling a class action, though, is the importance of achieving global peace, defined as an agreement that terminates the current lawsuit ad prevents future lawsuits over the same or related conduct.***"

The Release has value and it therefore should be involve some level of consideration to all this that are locked into the Release which is not in play on this case but I have presented an affordable achievable solution to regularize this issue.

On Halcom vs Genworth case, was as a mirror image serial case ,where in my Objection team challenged the overly broad scope of the Release and secure the support of the Judge. That same JUDGE, who had accepted the same Release language on the prior case, ruled at the Objectors Hearing and it is evidences in ECF 196:1-5 ,that the scope of the Release was too broad and must be narrowed for him to approve the settlements. Subsequently the Release was modified, and my attorneys filed for a legal fees and court incentive awards for improving the settlement in an intangible manner.

The value of narrowing the Release was quantified in ECF 106 on page 18 value at $64 for each of 145,000 class members but as an intangible $9,333,000 But that was just for narrowing the scope of the Release while on the Klee case the $50 could be argued as for the whole RELEASE.

And yes I have now provided the court with two separate cases where every class member receive some level of consideration for being locked into a Release.

On that basis, my "unreasonable reasonable "request for $1 per "empty handed" class member that is former vehicle owner seems both affordable and achievable . I believe the CY PRES is the best method to execute the task of providing every class members some level of consideration short of giving the $3 million to Federal Government to find its way into the NHTSA budget . I have previously suggested MADD as one of the possible CY PRES organizations. I now add CVSA & The **Highway Loss Data Institute (HLDI)** -info on last page of this submission.

The Klee plaintiff bench legals fees were initial challenges in Judge Kozinski's original Objection submission but he later amended that and withdrew that point. While the order of magnitude of the value of the improvements on Klee clearly merited an Objectors Court incentive award , that was perhaps an inappropriate topic.

The Klee case provided me no assistance on the other findings I have presented regarding the free inspection that may not be free.

Regarding the requirement that other routine service work be performed to be eligible for the "add-on" re-inspection , I suspect other Objectors will surface that same concern and that the issues will be regularized as failure to embrace capitulation on this issue is wrongheaded.

On the other misrepresentation concerning the use of the narrow term REPAIRED instead of REMEDIATED ( or the umbrella QUALIFED REPAIR ) the question is the lack of available data as to how many vehicle had what treatment on the Recall visit.

**Zakikhani V Hyundai /Kia 8:20-cv01584 CD CA**

After an exhaustive internet research effort (including use of the new Chat GPT AI feature) I have surfaced only one statistic on ABS brake failures, Exhibit B attached is a one page summary of an ongoing ABS Brake System Inspection program for commercial vehicles by the non-profit CVSA ( Commercial Vehicle Safety Alliance ) labeled 2013-02 but has a 2022 date at the bottom of report.

In the last paragraph it states that a survey of 1000 vehicles identified a ABS failure rate of one in six manufactured power units. The other high failure rate reported is for trailers. Assuming that this is a valid failure rate for automobiles than the settlement as written would disqualify 5 out 6 vehicles or about 83% from the free re-inspection benefit. To place a value on that loss by class members, the calculation must firstly identify how many of the original recall remediated vehicle of 1,881,510 vehicles will attempt to claim the free re-inspections. However per the documentation I submitted from a Cox Automotive Study, 34 % are expected to have all their maintenance work performed at a dealer I will use 35% as that is one of estimates that has been used to quantify the settlement. The CPA's Table 4 on page 33 of ECF 133-1 shows a total value of $112, 759,191. The elimination of 83% of that would take away $93 million.

If the benefits is made whole by removing the various hurdles, then I will withdraw my Objection on this issue if the named class representatives will acknowledge they did not protect the interest of the class by allowing for the hurdles to be established by passing on the recommended incentive awards. I believe the 11th circuit has already outlawed such incentive award per *Johnson v. NPAS Solutions LLC*, No. 18-12344, (11th Cir. Aug. 3, 2022).

**Zakikhani V Hyundai /Kia 8:20-cv01584 CD CA**

Otherwise I will be considering my other options.

## ***Potential  CY PRES  non-profit candidates.***

The key is to have nexus to Vehicle or Driver Safety :

1-. The **Commercial Vehicle Safety Alliance** (**CVSA)** is a nonprofit organization comprised of local, state, provincial, territorial and federal commercial motor vehicle safety officials and industry representatives. The Alliance aims to prevent commercial motor vehicle crashes, injuries and fatalities and believes that collaboration between government and industry improves road safety and saves lives.

2- The **Highway Loss Data Institute (HLDI)** shares and supports this mission through scientific studies of insurance data representing the human and economic losses resulting from the ownership and operation of different types of vehicles and by publishing insurance loss results by vehicle make and model.

Respectfully submitted to the Court with copies to both benches.