UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMTIN ZAKIKHANI et al., <br><br> Plaintiffs, <br><br> v. <br><br> HYUNDAI MOTOR COMPANY et al., <br><br> Defendants. | Case No. 8:20-cv-01584-SB-JDE <br><br> ORDER GRANTING PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS [DKT. NOS. 133, 134] |

Plaintiffs Kimberly Elzinga, Theodore Maddox, Jr., Jacqueline Washington, Patti Talley, Ana Olaciregui, Elaine Peacock, Melody Irish, Donna Tinsley, Ramtin Zakikhani, Brenda Evans, Anthony Vacchio, Minda Briaddy, Adam Pluskowski, Ricky Barber, Lucille Jacob, Carla Ward, Pepper Miller, and Cindy Brady move for final approval of their class action settlement with Defendants Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America Inc.  Dkt. No. 133.[1]  Plaintiffs also move for attorneys' fees and costs and service awards for the named Plaintiffs.  Dkt. No. 134.  Two class members,

---

[1] This case, *Zakikhani et al. v. Hyundai Motor Company et al.*, was consolidated with two related cases—namely, *Evans et al. v. Hyundai Motor Company et al.*, Case No. 8-22-cv-00300-SB-JDE (*Evans*), and *Pluskowski et al. v. Hyundai Motor America et al.*, Case No. 8:22-cv-00824-SB-JDE (*Pluskowski*).  Dkt. No. 120.  All docket citations refer to the *Zakikhani* docket unless otherwise noted.  When referring to the work performed by counsel and Plaintiffs, the Court refers to this matter as "these cases" to reflect work performed pre-consolidation.  The Plaintiffs in the related cases are occasionally referred to as the "*Evans* Plaintiffs" and "*Pluskowski* Plaintiffs."

1

Michael Graham and Walter Leen, object to the settlement. Dkt. Nos. 140 (original Graham objection), 146 (amended Graham objection), 147 (Leen objection). For the reasons stated below, the objections are OVERRULED and Plaintiffs' motions are GRANTED.

I.

Plaintiffs brought three substantially similar lawsuits arising from alleged defects with the Anti-Lock Brake System (ABS) in certain cars Defendants manufactured (the Defective Vehicles). Plaintiffs allege that the Defective Vehicles suffer from two flaws: first, the ABS modules remain charged with an electrical current even if the car is off; and second, the ABS modules allow moisture to enter. Dkt. No. 49 (Second Amended Class Action Complaint (SAC)), ¶ 140. Together, these defects allegedly make the Defective Vehicles susceptible to short circuiting, which can result in spontaneous vehicle fires even when a vehicle has been turned off for days. *Id.* ¶¶ 140–42.

On August 15, 2022, Plaintiffs moved for preliminary approval of their class action settlement as set forth in the Settlement Agreement. Following oral argument, the Court directed the parties to file an Amended Settlement Agreement that clarified ambiguities in the Settlement Agreement. Dkt. No. 127. The parties filed an Amended Settlement Agreement on October 17, 2022. Dkt. No. 129. All capitalized terms not herein defined have the same meaning as in the Amended Settlement Agreement. Dkt. No. 129-1. The Court preliminarily approved the Amended Settlement Agreement. Dkt. No. 130.

The Amended Settlement Agreement defines two Settlement Classes, consisting of owners or lessees of certain models of Hyundai and Kia vehicles who purchased or leased a Class Vehicle in the United States or while abroad on active U.S. military duty. Dkt. No. 129-1 §§ 1.15, 1.17. Excluded from the Settlement Classes are claims for death, personal injury, property damage to property other than the Class Vehicles, and subrogation; Defendants and their affiliates, directors, officers, employees, successors, and assigns; owners of Class Vehicles who purchased their vehicles after they were declared total losses; owners of Class Vehicles who individually settled their claims with Defendants prior to the Notice Date; and owners who purchased a Class Vehicle with knowledge of existing damage to the ABS Module. *Id.* §§ 1.15, 1.17, 1.35. Also excluded are people who timely opted out from the settlement by following the procedures outlined in the Long Form Notice. *Id.* §§ 1.15, 1.17. Finally, Class Members do not release

any claims that arise from any future recalls by the National Highway Traffic Safety Administration (NHTSA).  *Id*. § 1.35.

Under the terms of the Amended Settlement Agreement, Defendants agree to provide Class Members nationwide with repairs to remedy the defective ABS module, extended warranties that cover all future costs Class Members incur arising from the defective ABS module, one free inspection of a previously repaired or replaced ABS module when a Class Vehicle is brought to an authorized dealership for an unrelated service, reimbursement for out-of-pocket expenses arising from a defective ABS module already incurred, maximum Black Book value and goodwill payments to owners and lessees of Class Vehicles whose vehicles are a total loss due to a fire arising from a defective ABS module, and repairs for owners and lessees of Class Vehicles who experience a partial loss because of a fire resulting from a defective ABS module.  *Id*. § 2.  There are no caps on the amount Defendants will pay for expenses that qualify under the extended warranties, goodwill payments, and reimbursements for past repairs and repair-related expenses (such as towing).  To receive the warranty extension or repair or repair-related reimbursement benefits under the Settlement, however, Class Members must have their vehicle's ABS module inspected, repaired, or replaced within (a) 90 days of an ABS or ESC dashboard warning light going on and (b) 90 days of the latter of the Notice Date, the mailing of a NHTSA Recall campaign notice, or the availability of necessary repair parts at a Class Member's nearest authorized dealer.  *Id*. §§ 1.12, 2.2.4, 2.5.5.  Upon final approval of the Amended Settlement Agreement, Releasors—which include Plaintiffs, Class Members who do not opt out, and their various related entities—will release all Released Claims they have against Defendants (which generally include all claims arising from the ABS module defect except for the excluded claims identified above).  *Id*. §§ 1.37, 8.

II.

The Court conditionally certified the class for settlement purposes.  Dkt. No. 127 at 4.  The Court evaluated the parties' proposed procedures for noticing Class Members, which included mailing a copy of the Court-approved notice to all Class Members, emailing an additional copy to all Class Members for which Defendants maintain email addresses, and posting information about the settlement on settlement websites.  *Id*. at 6–7.

Hyundai Motor America, which elected to self-administer the settlement as to Hyundai Settlement Class, obtained 3,815,035 last known addresses of current

3

and former owners and lessees of Hyundai Class Vehicles from a third-party provider, IHS Automotive. Dkt. No. 133-1 Ex. 2 (Fernandez Decl.) ¶ 5. Epiq Class Action & Claims Solutions, Inc. (Epiq), the settlement administrator for the Kia Settlement Class, received 2,741,145 records containing Kia Class Vehicle VINs and owner name and address data from Kia America Inc. Dkt. No. 133-1 Ex. 3 (Sternberg Decl.) ¶ 6. Epiq also received 2,770,873 last known addresses for known Kia Class Members from IHS Automotive. Id. ¶ 7. Since Epiq received addresses from two different sources, it removed duplicate entries, yielding a noticing set of 4,567,995 records. Id. ¶ 8. Epiq also received data from Kia America Inc. and IHA Automotive for Kia Class Vehicles sold or leased in the U.S. territories, yielding 16,583 addresses for Kia Class Members in the U.S. territories. Sternberg Decl. ¶ 9. All of these Hyundai and Kia address records were run through the U.S. Postal Service's National Change of Address Database. Fernandez Decl. ¶ 5; Sternberg Decl. ¶ 8; Dkt. No. 157 ¶ 2.

Hyundai Motor America mailed 3,709,674 class notices to Hyundai Class Members, and Epiq mailed 3,296,598 class notices to Kia Class Members. Fernandez Decl. ¶ 6; Sternberg Decl. ¶ 11. These notices included toll-free phone numbers for Class Members to call with questions, referred Class Members to the settlement website applicable to their class, and provided information about the settlement process.[2] As of April 25, 2023, 319,817 of the class notices mailed to the Hyundai Class were returned as undeliverable with no forwarding address. Dkt. No. 156 ¶ 2. As of March 17, 2023, 205,566 of the class notices mailed to the Kia Class were returned as undeliverable with no forwarding address. Sternberg Decl. ¶ 12. Although the number of undeliverable notices appears high, this is to be expected in light of the fact that some Class Vehicles are from model years as early as 2006.

Hyundai Motor America emailed 1,827,456 class notices to Hyundai Class Members and Epiq emailed 1,437,841 class notices to Kia Class Members. Fernandez Decl. ¶ 8; Sternberg Decl. ¶ 13. 853,981 email notices to the Hyundai Class bounced back; 704,121 email notices to the Kia Class did the same. Fernandez Decl. ¶ 9; Sternberg Decl. ¶ 14.

---

[2] The settlement website for the Hyundai Class (HyundaiHECUSettlement.com) launched on January 27, 2023, and the website for the Kia Class (KiaHECUSettlement.com) launched on February 16, 2023. Fernandez Decl. ¶ 3; Sternberg Decl. ¶ 3.

The Court finds that this notice complies with the requirements of Rule 23 and due process.[3]

Epiq provided notice of the settlement within ten days of the proposed settlement being filed with the Court to the Attorneys General of the United States, of each of the 50 states, of the District of Columbia, and of the U.S. Territories on August 24 and 25, 2022. Dkt. Nos. 142, 144. After the parties filed the Amended Settlement Agreement, Epiq provided supplemental notice of the amended agreement. Dkt. Nos. 143, 145. No governmental agency contests the Amended Settlement Agreement. The Court finds that the governmental notice requirements of the Class Action Fairness Act are satisfied. 28 U.S.C. § 1715.

Two Class Members objected to the settlement. Dkt. Nos. 140, 146, 147. 134 Hyundai Class Members and 127 Kia Class Members opted out of the settlement. Dkt. No. 156 ¶ 3; Dkt. No. 157 ¶ 3.

III.

A.

Plaintiffs seek final approval of the Amended Settlement Agreement. Final approval may only be granted if the Court, after "evaluat[ing] the fairness of a settlement as a whole," finds that the settlement is "fair, reasonable, and adequate." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)). The Court's inquiry is guided by several, non-exclusive factors:

---

[3] An objector, Michael Graham, challenges the adequacy of the notice of the conditions for obtaining the settlement's free inspection benefit. Dkt. No. 146. The short-form notice distributed to Class Members and the settlement websites both included language that the free inspection benefit was "subject to certain conditions" and included readily available details on where Class Members could obtain further information. The notice given to Class Members was sufficient. Nor is the notice of the benefit given to Class Members misleading as Graham argues. Graham relies on Cal. Bus. & Prof. Code § 17537.11 and 16 C.F.R. § 251.1, but neither provision supports Graham's argument. Cal. Bus. & Prof. Code § 17537.11 applies to coupons, and 16 C.F.R. § 251.1(c) makes clear that an offer of free merchandise can include conditions so long as they are properly disclosed (as they were here).

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* (internal quotation marks omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Each factor does not necessarily apply to every class action settlement, and others may also be considered." *Miller v. Wise Co.*, No. 17-cv-00616-JAK, 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020).

When there is a settlement prior to formal class certification, a court must also determine whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). In addition to explicit collusion, a court should look for "more subtle signs" that class counsel have acted in their own self-interest or only in the interest of certain class members, such as: (1) class counsel receiving a disproportionate amount of the settlement or being "amply rewarded" when class members receive no monetary relief; (2) payment of attorneys' fees separate and apart from class funds; or (3) an arrangement reverting any fees not awarded to the defendant rather than the class fund. *Id.*

B.

First, the Court evaluates together the strength of Plaintiffs' case, the risk of continued litigation, and the settlement amount. To determine if a settlement is fair, the Court must balance the strengths and weaknesses of Plaintiffs' case against the risks and expenses of continued litigation. *In re Mego*, 213 F.3d at 458–59. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). No one formula governs the Court's determination of the likelihood of Plaintiffs' success, which the Ninth Circuit has described as "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Plaintiffs

alleged that defective ABS modules caused fires in Class Vehicles. Under the proposed settlement, Class Members will receive benefits designed to ensure that their Class Vehicles do not have defective ABS modules and to make Class Members who suffer losses because of a fire caused by a defective ABS module whole. These benefits include ABS module repairs, replacements, and inspections; extended warranties; reimbursement for out-of-pocket expenses attributable to the defect; repairs to Class Vehicles who experience a partial loss because of a fire caused by the defect; and payments to owners and lessees of Class Vehicles whose vehicles are a total loss due to a fire arising from the defect. Dkt. No. 129-1 § 2. An individual Class Member's relief is based on the harm he or she suffered (i.e. whether a defective ABS module has been or needs to be replaced, and whether the Class Member's vehicle has suffered a fire from a defective module).

Further, these cases have been in litigation for more than two years, involved multiple rounds of motions to dismiss, and did not reach the class certification stage. Plaintiffs represent that absent a settlement, these cases would likely present extensive disputes about class certification, the scope of discovery, expert discovery, and *Daubert* challenges, as well as the possibility of an interlocutory appeal. This representation appears to be accurate based on this Court's experience with this litigation. An immediate recovery for Class Members is preferable to prolonged risk and expense of further litigation. Therefore, the settlement of their claims for benefits tailored to make them whole under the Amended Settlement Agreement is fair and adequate. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (holding that a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

Second, the Court examines the extent of discovery completed and the stage of the proceedings. A court may presume a settlement is fair "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. The settlement is the product of extensive discovery. Prior to filing *Zakikhani*, Plaintiffs' counsel in *Zakikhani* conducted a pre-suit investigation that included retaining an automotive expert and reviewing NHTSA filings. Dkt. No. 133-1 (Fegan Decl.) ¶¶ 6–8. Plaintiffs' counsel in *Evans* also engaged in a pre-suit investigation. Dkt. No. 133-2 (Berman Decl.) ¶ 6. The parties exchanged initial disclosures, served document requests and interrogatories, engaged in third party discovery, and engaged in an extensive meet and confer process about the scope of discovery. Fegan Decl. ¶¶ 18–32. Plaintiffs conducted depositions of two of the Defendants' Rule 30(b)(6) witnesses. *Id*. ¶¶ 50–51. The parties subsequently mediated before the Hon. Edward A. Infante for more than 14 hours over the course of two days and continued settlement discussions afterwards,

7

which resulted in the development of the settlement agreement. *Id*. ¶¶ 58–61. The Court finds that there was sufficient discovery and an arms-length negotiation. Accordingly, the work completed to date favors settlement.

Third, the Court looks at the experience and views of Class Counsel. Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination "[g]reat weight," because counsel "are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528. Class Members are represented by experienced counsel at multiple law firms. *See* Fegan Decl. ¶ 70; Berman Decl. ¶¶ 4–5. Class Counsel have worked on this matter for more than two and a half years and, as noted above, conducted discovery sufficient to make their views on settlement informed. Class Counsel support approval. *See* Fegan Decl. ¶ 70; Berman Decl. ¶¶ 15–16. Counsel's agreement that the settlement is favorable to the class weighs in favor of approval.

Fourth, there is no government participant and so this factor is neutral.

Finally, the Court examines the reactions of Class Members. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529. Two Class Members (out of millions of Class Members) objected to the settlement. Dkt. Nos. 140, 146, 147. As of April 25, 2023, 261 Class Members opted out from participating in the settlement. Dkt. No. 156 ¶ 3; Dkt. No. 157 ¶ 3. Class Members overwhelmingly support the settlement, which supports approval.

C.

The Court now turns to the objections to the settlement. Dkt. Nos. 140, 146, 147. Plaintiffs responded to the objections. Dkt. No. 149. A district court is required to give "a reasoned response" to non-frivolous objections. *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal citation omitted). The objections here are procedurally improper, and their contents do not alter the Court's view that the settlement is fair, reasonable, and adequate.

The Court first evaluates the objections' procedural propriety. When the Court preliminarily approved the settlement, it set procedural requirements for filing objections. The Court received Graham's initial objection on April 4, 2023. Dkt. No. 140. The objection did not include agreements between Graham and his

counsel, was not signed by Graham, and was not mailed to Class Counsel as the Court required. Graham later filed an "amended" objection on April 11, after Class Members' deadline to object. Dkt. No. 146. The amended objection failed to remedy his initial objection's procedural deficiencies. Graham's amendment purported to clarify that he does not seek to intervene, but the amended objection also included substantial revisions to the content of Graham's initial objection. These revisions are untimely. Further, neither Graham's objections nor Leen's objection states whether the objection only applies to the objector or if it instead applies to the entire Settlement Class, which was not only ordered by the Court but is required under Rule 23. Fed. R. Civ. P. 23(e)(5)(A). These deficiencies warrant overruling the objections. *See Moore v. PetSmart, Inc.*, 728 Fed. App'x 671, 673 (9th Cir. 2018) (affirming a district court's striking of a timely objection that was unsigned in violation of Federal Rule of Civil Procedure 11).

Nevertheless, the Court considers the objections and separately overrules them on the merits. Both objectors primarily challenge the settlement agreement's free inspection provision, which reads:

> If a Settlement Class Member brings their Class Vehicle into an authorized Hyundai dealership (for Hyundai Class Vehicles) or an authorized Kia Dealership (for Kia Class Vehicles) for another unrelated service, the Settlement Class Member may request a free, one-time inspection of the Class Vehicle's ABS Module, to the extent the Class Vehicle's ABS Module was previously repaired or replaced pursuant to a NHTSA Recall, to ensure the repaired or replaced ABS Module is not affected by the Qualifying Defect.

Dkt. No. 129-1 § 2.3.1.

Graham and Leen both argue that this provision is unclear or misleading. Both suggest that the agreement does not define what makes an ABS module "previously repaired or replaced." Graham proposes to replace the phrase "previously repaired or replaced" with the defined term "Qualifying Repair" (which would extend beyond a recall repair). Graham and Leen also express concern that the free inspection is not truly free because a vehicle must be brought to an authorized dealership for unrelated work to obtain the benefit. They seek to eliminate the provision's requirement that the vehicle be brought to an authorized dealership for unrelated work.

9

Graham and Leen do not identify any ambiguity in the free inspection provision, which clearly allows Class Members whose ABS modules have been repaired or replaced pursuant to a NHTSA Recall to receive a free inspection to confirm that their ABS modules are now defect-free when they bring their vehicles to a dealership for an unrelated service appointment.[4] Their objections seem primarily directed to the scope of the benefit provided. Graham and Leen propose to expand the availability of the free inspection to instances in which a defective ABS module was not repaired or replaced pursuant to a NHTSA Recall, and they seek to provide an inspection to all Class Members regardless of whether they bring their vehicles to a dealership for servicing.[5] An objection that merely argues that the settlement terms for Class Members could have been better "does not mean the settlement [is] not fair, reasonable or adequate." *Hanlon*, 150 F.3d at 1027.

A repair or replacement of a vehicle's ABS module is intended to address the risk of fires, whereas a free inspection is designed to provide verification and peace of mind after a repair or replacement has been performed. Graham expresses concerns that the settlement does not provide benefits if the free inspection uncovers an ongoing issue with an ABS module and contends that the nature of the ABS module defect creates a need for ongoing monitoring. He does not explain, however, why the settlement's warranty provisions are unable to provide relief for ongoing problems and does not demonstrate the need for ongoing monitoring of a repaired or replaced ABS module (or that the absence of such monitoring renders the settlement unfair, unreasonable, or inadequate). When asked about the need for ongoing monitoring at the final approval hearing, Graham's counsel asserted that the need arises from Defendants' failure to identify the precise cause of the defect. However, counsel was unable to identify any instance of an ongoing problem after an ABS module has been repaired or replaced pursuant to a recall, and so his

---

[4] At the preliminary approval hearing, defense counsel confirmed this reading of the settlement agreement. Dkt. No. 125 at 12–13 of 29. Graham argues that the settlement does not obligate Defendants to provide the free inspection because Class Members can "request" it, which is a concern that Leen appears to echo. The settlement contemplates that Class Members will receive a free inspection if the requisite conditions are met.

[5] Graham asserts that the requirement that a Class Vehicle be brought to a dealership for servicing means that Class Members will always have to pay to obtain a purportedly free benefit. This is not necessarily so, as it will depend on the reason for the unrelated service. In any event, the benefit offered is a free *inspection* when a Class Vehicle is otherwise being serviced.

argument is based on speculation. Class Counsel and defense counsel represented that the risk of an electrical short or fire after repair or replacement was a topic of discovery, which revealed that there is no significant risk of fire following a repair or replacement. The earliest recalls were more than seven years ago and there has not been a reported instance of a fire from the ABS defect following a repair or replacement. The Court is satisfied that the settlement's failure to include ongoing monitoring does not render it inadequate. Graham and Leen's desire for more robust inspection benefits to Class Members does not persuade the Court that it should deny final approval.

Graham raises separate challenges to the window in which Class Members can file a claim for a Qualifying Repair and to the warranty provisions. The claim filing deadline is the deadline by which Class Members must file claims with the applicable Settlement Administrator to receive reimbursements for repairs and repair-related expenses or total loss payments. The claims period runs through 60 days after final approval, which is several months after the Notice Date. Graham presents no reason why this amount of time is insufficient for Class Members to file claims. As to the warranty provisions, he argues that "an absent class member with an expired warranty may have greater warranty rights than a class member whose warranty has not expired." Dkt. No. 146 at 22 of 27. He does not explain the circumstances in which this would be the case. If the five-year, 60,000 mile new vehicle warranty has not expired and the Class Member has repaired or replaced the ABS module, then Qualified Repairs are covered for up to 12 years after the latter of the date of original retail delivery or first use. *See* Dkt. No. 129-1 §§ 2.1.1, 2.1.2. This is effectively a seven-year extension of the warranty on the ABS module. If a Class Vehicle's new vehicle warranty has expired, then the Class Member receives a new five-year warranty on the ABS module. *Id*. §§ 2.1.3, 2.1.4. Graham also argues that the warranty provisions should provide Class Members with a "lifetime warranty" (presumably limited to the ABS module). But he offers no basis for concluding that a lifetime warranty is needed when there have been no reported instances of vehicle fires after an ABS module is repaired or replaced. Graham's contentions lack merit.

Graham also suggests that the settlement include a "sweepstakes" among participating Class Members to improve the response rate, and Leen suggests that the settlement require Defendants to donate to a nonprofit organization on behalf of former Class Vehicle owners and lessees. A district court "may suggest modifications" to a settlement agreement "but ultimately . . . must consider the proposal as a whole and as submitted." *Officers for Just.*, 688 F.2d at 630. The Court lacks the power to "delete, modify or substitute" the provisions of the

11

agreement submitted for final approval. *Hanlon*, 150 F.3d at 1026 (internal citation omitted). Since the benefits provided to Class Members under the Amended Settlement Agreement are reasonably tailored to the injuries Class Members suffered, the settlement's failure to include a sweepstakes or donation does not render it unfair, unreasonable, or inadequate.

Finally, Leen expresses concern about the benefits available to former owners and lessees of Class Vehicles and asserts that former owners and lessees do not receive consideration for the releases they give to Defendants under the settlement. While most of the settlement's benefits (i.e. the warranty, out of pocket expense reimbursement, and inspection benefits) are only useful to current owners and lessees, former owners and lessees are entitled to cash compensation if they suffered a total loss of a Class Vehicle from a fire caused by a defective ABS module. Moreover, the releases Class Members provide under the settlement are limited to claims arising from the ABS defect. Leen has not presented any evidence suggesting that the ABS defect impacted the resale price of his vehicle or otherwise cause him harm. And to the extent that any former owner or lessee was dissatisfied with the settlement, he or she had the chance to opt out. Because Leen has not identified an injury that he or other similarly situated Class Members have suffered for which the settlement does not provide an adequate remedy, the Court declines to disrupt the settlement.[6] *See Collado v. Toyota Motor Sales, U.S.A., Inc.*, Nos. CV10–3113–R, CV–10–3124–R, 2011 WL 5506080, at *2 (C.D. Cal. Oct. 17, 2011) (finding objection "too insubstantial for the Court to disturb the overall settlement").

D.

The Court turns to the issue of whether the settlement is collusive. The Court finds that the settlement is not a product of collusion between the parties. Attorneys' fees and costs are to be paid separately from any benefit Class Members receive. Although "[s]uch an agreement has the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," the settlement does not include a clear

---

[6] On April 19, 2023, Leen filed a reply to Plaintiffs' response to his objection and a supplemental brief in support of his objection, and on April 21 he filed supporting exhibits. Dkt. Nos. 150, 151, 152, 153. These filings are not procedurally proper or timely. Accordingly, the Court STRIKES them. *See Moore*, 728 Fed. App'x at 673.

sailing provision that would prevent Defendants from challenging Plaintiffs' requested fees and does not cap Class Members' benefits. *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000). In addition, the parties negotiated the settlement with a neutral mediator, which further weighs "in favor of a finding of non-collusiveness." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 948. Finally, there is no evidence of explicit collusion here, and Class Members appear to be receiving a favorable outcome. Accordingly, the Court is satisfied that the settlement did not result from collusion between the negotiating parties.

*   *   *

Based on its analysis of the factors for final approval, the Court finds that the settlement is "fair, reasonable, and adequate" and not the product of collusion between the parties. *Lane*, 696 F.3d at 818. The Court therefore **OVERRULES** the objections to the settlement (Dkt. Nos. 140, 146, 147) and **GRANTS** Plaintiffs' motion for final approval of the class action settlement.

IV.

Plaintiffs also move for an award of attorneys' fees in the amount of $8,696,551.50, an award of costs in the amount of $239,767.60, and service awards to Class Representatives totaling $67,500. The Amended Settlement Agreement does not include a clear sailing provision and the parties reached an agreement for Defendants to pay $6,182,500 to Class Counsel and other attorneys representing Plaintiffs (including $248,421.90 in costs) and the service awards Plaintiffs initially requested. Dkt. No. 148. The Court has not received any objections from Class Members to Plaintiffs' motion for attorneys' fees and costs and service awards. The Court separately addresses the parties' request for approval for attorney payments and Class Representative payments.

A.

A district court has "broad discretion to determine the amount of reasonable fees." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 572 (9th Cir. 2019). Attorney's fees in class actions are calculated using either the lodestar method or the percentage-of-recovery method. *Id*. at 570. The lodestar is calculated by multiplying the hours reasonably expended by a reasonable hourly rate based on the experience of counsel and the prevailing market rate in the community. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). A court

13

may apply a multiplier to the lodestar amount based on the results achieved, the complexity of the case, the risks involved, the length of the litigation, and the contingent nature of representation. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

Several law firms worked on this matter, including Class Counsel (Hagens Berman Sobol Shapiro LLP and Fegan Scott LLC) and other firms that represented Plaintiffs (Freed Kanner London & Millen LLC, Lynch Carpenter LLP, Gibbs Law Group, and Shindler, Anderson, Goplerud & Weese, PC). These firms document 4,551.4 hours in total on this matter. Dkt. No. 134-1 (Berman Fees Decl.) ¶ 17; Dkt. No. 134-2 (Fegan Fees Decl.) ¶ 81; Dkt. No. 134-3 (Jagher Decl.) ¶ 11; Dkt. No. 134-4 (Carroll Decl.) ¶ 14; Dkt. No. 134-5 (Rivas Decl.) ¶ 14; Dkt. No. 134-6 (Goplerud Decl.) ¶ 8. These cases have been ongoing for more than two and a half years. Plaintiffs' expert (Prof. Robert H. Klonoff) reviewed all counsel's billing records and concludes that counsel appropriately distributed work to attorneys based on seniority within their firms. Dkt. No. 134-1 at 102 of 173. In addition, the *Evans* Plaintiffs' lawyers appear to have worked cooperatively with the *Zakikhani* Plaintiffs' lawyers, which included jointly conducting discovery. Berman Fees Decl. ¶ 7–8. Although counsel have not submitted detailed billing records to the Court, in light of the matter's complexity, the extensive discovery conducted to date, multiple rounds of pleading challenges, a formal mediation, and counsel's representations that they strived to work efficiently—and given Defendants' non-opposition—the number of hours counsel asserts appears reasonable and the Court will not require counsel to submit time records for in camera review. *See, e.g.*, *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1165 (C.D. Cal. 2010) (awarding attorneys' fees based on summaries of work class counsel performed rather than complete billing records where counsel offered to provide records to the court in camera).

The hourly rates for timekeepers across the various firms in this matter range from $225–$400 for paralegals, $350–$550 for associates and staff attorneys, $550–$850 for of counsel, and $625–$1,285 for partners. Berman Fees Decl. ¶ 17; Fegan Fees Decl. ¶ 81; Jagher Decl. ¶ 11; Carroll Decl. ¶ 14; Rivas Decl. ¶ 14; Goplerud Decl. ¶ 8. Although some of these rates appear to be high, the Court accepts them in light of Defendants' non-opposition and the fact that this is not a common fund case and so the attorneys' fees award will not reduce the benefits Class Members will receive under the settlement. *See Fernandez v. Penna*, Case No. 2:19-cv-05056-SB, 2021 WL 4353116, at *1 (C.D. Cal. Mar. 15, 2021) (approving high rates on an "unchallenged and unopposed record").

14

     Multiplying the number of hours Plaintiffs' counsel spent on this matter by counsel's asserted rates yields a lodestar of $2,898,850.50.  The total fees and costs Defendants agreed to pay minus counsel's updated out of pocket costs yields a total fee award of $5,934,078.10.  *See* Dkt. No. 148.  Awarding counsel this amount would result in the application of a 2.04 multiplier.  Counsel obtained a successful outcome for Class Members in this settlement.  As explained above, the benefits to Class Members in the Amended Settlement Agreement are targeted to fix the defective ABS module in Class Vehicles and to make Class Members who incur out-of-pocket expenses and losses whole.  The relief obtained through the settlement largely tracks the relief that the *Zakikhani* Plaintiffs sought.  *See* Dkt. No. 49 (SAC).  This matter is complex and has involved litigating significant legal issues including personal jurisdiction over foreign Defendants, Plaintiffs' standing, and the application of state law to Class Members nationwide, among other issues.  Plaintiffs' counsel devoted substantial resources to this matter while working on a contingency basis.  Further, counsel anticipate continuing to work on this matter without the possibility of later receiving fees as they assist Class Members in obtaining the benefits afforded to them under the settlement.  Accordingly, the Court finds that a 2.04 multiplier is justified by the circumstances of this case.  *See Moreno v. Pretium Packaging, L.L.C.*, Case. No. 8:19-cv-02500-SB, 2021 WL 3673845, at *3 (C.D. Cal. Aug. 6, 2021) (finding a multiplier of 2.57 reasonable "in light of the contingent nature of recovery, the complexity of the issues, and the result obtained"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (noting that a 3.07 multiplier is "well within the range for reasonable multipliers").

     Plaintiffs also request an award of costs.  Documented costs to date include mediation fees, court transcripts, expert fees, costs associated with conducting discovery (including electronic discovery), filing fees, legal research, travel and hotel expenses, telephone expenses, copying services, and shipping expenses.  Berman Fees Decl. ¶ 21; Fegan Fees Decl. ¶ 83; Jagher Decl. ¶ 14; Carroll Decl. ¶ 16; Rivas Decl. ¶ 15.  Counsel also anticipates being invoiced for $67,000 in additional expert fees.  Berman Fees Decl. ¶ 22.  These are traditional litigation costs in the class action context.  The requested costs appear reasonable in light of the length of this case, the number of firms that were involved, and the matter's complexity.  Accordingly, the Court approves the parties' agreement for Defendants to pay $6,182,500 in attorneys' fees and costs to Class and Plaintiffs' Counsel.

C.

Finally, the parties have agreed for Defendants to pay Class Representatives service awards ranging from $2,500 to $5,000. They seek $5,000 for each *Zakikhani* Plaintiff and $2,500 for each *Evans* and *Pluskowski* Plaintiff. Service awards are discretionary and meant to compensate a class representative "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Awards typically range from $2,000 to $10,000, and a $5,000 award is considered presumptively reasonable. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266–67 (N.D. Cal. 2015). Several factors guide the Court's determination of whether Plaintiff's requested award is reasonable:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Stuart v. Radioshack Corp.*, No. 07-cv-4499-EMC, 2010 WL 3155645, at *7 (N.D. Cal. Aug. 9, 2010).

Seven *Zakikhani* Plaintiffs (Kimberly Elzinga, Melody Irish, Theodore Maddox Jr., Elaine Peacock, Patti Talley, Donna Tinsley, and Jacqueline Washington) spent between 10 and 20 hours, Ana Olaciregui spent between 18 and 21 hours, and Ramtin Zakikhani spent between 36 and 41 hours on this matter. Fegan Fees Decl. Exs. 3–11. Two of the three *Evans* Plaintiffs (Brenda Evans and Minda Briaddy) each assert that they spent approximately 10 hours on this matter; the third *Evans* Plaintiff spent approximately five hours on the matter. Berman Fees Decl. Exs. 3–5. Five *Pluskowski* Plaintiffs (Adam Pluskowski, Ricky Barber, Lucille Jacob, Carla Ward, and Cindy Brady) spent between 8 and 10 hours, and the remaining Plaintiff (Pepper Miller) spent between 12 and 14 hours on this matter. Rivas Decl. Exs. 2–7.

Each of these Plaintiffs worked with their counsel to assist counsel in litigating their claims, which included providing information to counsel, discussing case updates with counsel, and reviewing documents. This matter has been in litigation for a substantial period of time. While the personal risk to Plaintiffs in bringing these cases was low, in light of the presumption that a $5,000 award is reasonable, the fact that Plaintiffs request service awards that are correlated to the

16

amount of time they each spent on this matter, the fact that the *Evans* and *Pluskowski* Plaintiffs request only $2,500 each, and Defendants' agreement to pay the service awards, the Court will grant Plaintiffs their requested service awards.

V.

For the foregoing reasons, Plaintiffs' motions for final approval of their class action settlement (Dkt. No. 133) and fees and costs (Dkt. No. 134, subject to the parties' agreement indicated at Dkt. No. 148) are GRANTED. The parties are ordered to file a proposed judgment no later than Tuesday, May 9, 2023 at 9:00 a.m.

IT IS SO ORDERED.

Date: May 5, 2023

                                                Stanley Blumenfeld, Jr.
                                                United States District Judge