UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMTIN ZAKIKHANI et al., <br><br> Plaintiffs, <br><br> v. <br><br> HYUNDAI MOTOR COMPANY et al., <br><br> Defendants. | Case No. 8:20-cv-01584-SB-JDE <br><br> ORDER DENYING OBJECTOR'S POST-SETTLEMENT MOTIONS [DKT. NOS. 165, 166, 167] |

      Plaintiffs brought this class action alleging that certain cars manufactured by Defendants Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America Inc. suffered from defects with the Anti-Lock Brake System (ABS). After more than two years of litigation, the parties reached a comprehensive settlement that provides class members, who number several million, with benefits targeted to make them whole. Specifically, the settlement provides repair and replacement benefits, inspection benefits, extended warranties, reimbursements, and payments for vehicles losses incurred resulting from the defect. The settlement does not include any caps on the benefits Defendants must provide to class members and separately requires the payment of Plaintiffs' counsel's attorneys' fees and costs and service awards to Plaintiffs. Finding the settlement to be fair, reasonable, and adequate, the Court granted final approval of the settlement, overruled two objections that were filed, and entered judgment. Dkt. Nos. 160, 164.

      One of the objectors, Michael Graham, has filed three post-judgment motions: (1) a motion for reconsideration, Dkt. No. 166, (2) a motion to intervene, Dkt. No. 165, and (3) a motion for attorney's fees and a service award for Graham, Dkt. No. 167. The Court finds the motions suitable for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. The motions are meritless.

I.

Plaintiffs brought three substantially similar lawsuits arising from alleged defects with the ABS in certain cars Defendants manufactured (the Defective Vehicles).¹  Plaintiffs alleged that the Defective Vehicles suffer from two flaws: first, the ABS modules remain charged with an electrical current even if the car is off; and second, the ABS modules allow moisture to enter.  Dkt. No. 49 (Second Amended Class Action Complaint (SAC)) ¶ 140.  Together, these defects allegedly make the Defective Vehicles susceptible to short circuiting, which can result in spontaneous vehicle fires even when a vehicle has been turned off.  *Id.* ¶¶ 140–42.

After litigating the case for nearly two years, the parties successfully negotiated a class settlement following a lengthy mediation.  Plaintiffs moved for preliminary approval of their class action settlement on August 15, 2022.  Following oral argument, the Court directed the parties to file an amended settlement agreement that clarified ambiguities in the original agreement.  Dkt. No. 127.  The parties filed an amended settlement agreement on October 17, 2022.  Dkt. No. 129.  The Court preliminarily approved the amended settlement agreement.  Dkt. No. 130.

Following preliminary approval, the settlement administrators provided notice to Class Members² using the notices and procedures approved by the Court.  Defendant Hyundai Motor America, which elected to self-administer the settlement as to Hyundai Class, obtained 3,815,035 last known addresses of current and former owners and lessees of Hyundai Class Vehicles from a third-party provider, IHS Automotive.  Dkt. No. 133-1 Ex. 2 (Fernandez Decl.) ¶ 5.  Epiq Class Action & Claims Solutions, Inc. (Epiq), the settlement administrator for the Kia Class, received 2,741,145 records containing Kia Class Vehicle VINs and owner names and addresses from Kia America Inc.  Dkt. No. 133-1 Ex. 3 (Sternberg Decl.) ¶ 6.  Epiq also received 2,770,873 last known addresses for

---

¹ This case, *Zakikhani et al. v. Hyundai Motor Company et al.*, was consolidated with two related cases:  *Evans et al. v. Hyundai Motor Company et al.*, Case No. 8-22-cv-00300-SB-JDE, and *Pluskowski et al. v. Hyundai Motor America et al.*, Case No. 8:22-cv-00824-SB-JDE.  Dkt. No. 120.  All docket citations refer to the *Zakikhani* docket.

² All capitalized terms not herein defined have the same meaning as in the amended settlement agreement.  Dkt. No. 129-1.

known Kia Class Members from IHS Automotive. *Id*. ¶ 7. Since Epiq received addresses from two different sources, it removed duplicate entries, yielding a set of 4,567,995 records. *Id*. ¶ 8. Epiq also received data from Kia America Inc. and IHA Automotive for Kia Class Vehicles sold or leased in U.S. territories, yielding 16,583 addresses for Kia Class Members in the U.S. territories. Sternberg Decl. ¶ 9. All these Hyundai and Kia address records were run through the U.S. Postal Service's National Change of Address Database. Fernandez Decl. ¶ 5; Sternberg Decl. ¶ 8; Dkt. No. 157 ¶ 2.

Hyundai Motor America mailed 3,709,674 class notices to Hyundai Class Members, and Epiq mailed 3,296,598 class notices to Kia Class Members. Fernandez Decl. ¶ 6; Sternberg Decl. ¶ 11. The notices included toll-free phone numbers for Class Members to call with questions, referred Class Members to the settlement website applicable to their class, and provided information about the settlement process.[3] 205,566 of the class notices mailed to the Kia Class were returned as undeliverable with no forwarding address as of March 17, 2023. Sternberg Decl. ¶ 12. At the time of the fairness hearing, the number of undeliverable class notices for the Hyundai Class was unavailable. Shortly after the fairness hearing, the parties submitted a supplemental declaration indicating that 319,817 of the class notices mailed to the Hyundai Class were returned as undeliverable with no forwarding address as of April 25, 2023. Dkt. No. 156 ¶ 2.

In addition to the physical mailings, Hyundai Motor America emailed 1,827,456 class notices to Hyundai Class Members, and Epiq emailed 1,437,841 class notices to Kia Class Members. Fernandez Decl. ¶ 8; Sternberg Decl. ¶ 13. 853,981 email notices to the Hyundai Class bounced back, as did 704,121 email notices to the Kia Class. Fernandez Decl. ¶ 9; Sternberg Decl. ¶ 14.

One hundred and thirty-four Hyundai Class Members and 127 Kia Class Members opted out of the settlement. Dkt. No. 156 ¶ 3; Dkt. No. 157 ¶ 3. Graham and one other Class Member objected to the settlement. Dkt. Nos. 140, 146, 147. The objections were largely based on the settlement agreement's free inspection provision, which the objectors argued was unclear or misleading since, in their

---

[3] The settlement website for the Hyundai Class (HyundaiHECUSettlement.com) launched on January 27, 2023, and the website for the Kia Class (KiaHECUSettlement.com) launched on February 16, 2023. Fernandez Decl. ¶ 3; Sternberg Decl. ¶ 3.

view, (1) the provision did not clarify the circumstances in which class members could obtain the benefit and (2) the inspections were not truly free since they require class members to bring their vehicles to an authorized dealership for unrelated work.  Relatedly, Graham argued that the notice given to class members of the free inspection provision was misleading because it did not identify upfront the conditions that class members are required to meet in order to obtain the benefit.  Graham also sought (1) to extend the window during which class members were required to file claims to receive reimbursements, (2) a "lifetime warranty" for the ABS module, and (3) the implementation of a "sweepstakes" among participating class members to improve the response rate.  The other objector suggested that former owners and lessees did not receive consideration for their provision of releases to Defendants and that the Court require Defendants to donate to a nonprofit organization on behalf of former Class Vehicle owners and lessees.

The Court held a fairness hearing on April 21, 2023.  Dkt. No. 154.  Both objectors appeared at the hearing and had a full opportunity to present their arguments.  *See* Dkt. No. 158 (Fairness Hearing Transcript).  Graham's counsel presented first, followed by the other objector.  *Id*. at 9:9–24:18.  After the second objector's presentation, Graham's counsel requested another opportunity to present argument, which the Court denied.  *Id*. at 24:21–25:8.  At the end of the hearing, Graham's counsel attempted to submit exhibits to the Court that he had not filed with his objection or otherwise submitted to the Court and the parties beforehand.  *Id*. at 46:13–47:12.  The Court denied counsel's request.

The Court overruled the objections, granted final approval of the settlement, and entered judgment accordingly.  Dkt. Nos. 160, 164.  These motions followed.  Plaintiffs and Defendants oppose the motions.  Dkt. Nos. 171 (Plaintiffs' Opp. to Intervention Motion), 172 (Plaintiffs' Opp. to Attorneys' Fees Motion), 173 (Plaintiffs' Opp. to Reconsideration Motion), 174 (Defendants' Opp. to Attorneys' Fees Motion), 175 (Defendants' Joinder in Plaintiffs' Opps.).

II.

The Court begins with Graham's reconsideration motion, which the notice of motion indicates is brought under Federal Rules of Civil Procedure 60(b)(2) and (6).  Dkt. No. 166 at 4.

A.

In this district, a motion for reconsideration may be made

> only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

L.R. 7-18. "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *Id*.

Rule 60(b)(2) allows the Court to relieve a party from an order or judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)[.]" Fed. R. Civ. P. 60(b)(2). Rule 60(b)(6) provides for relief from an order or judgment for "any other reason [in addition to the reasons enumerated in Rule 60(b)(1)–(5)] that justifies relief." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b) is "extraordinary" and "may be granted only upon an adequate showing of exceptional circumstances." *Stevens v. ITT Sys., Inc.*, 868 F.2d 1040, 1041 n.1 (9th Cir. 1989); *see also Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1103 (9th Cir. 2006) ("Judgments are not often set aside under Rule 60(b)(6). Rather, the Rule is used sparingly as an equitable remedy to prevent manifest injustice . . . ." (cleaned up)).

B.

Graham has not identified any new facts or law that were unavailable at the time the Court granted final approval. Most of the motion impermissibly repeats arguments and authorities that Graham previously raised in his objections. In connection with his argument that the parties did not provide adequate notice to class members, Graham also relies on two declarations from the settlement administrators filed after the fairness hearing at the Court's request. Dkt. Nos. 156, 157. The declarations included finalized lists of the class members opting out of the settlement for each subclass. One of the declarations included the number of undeliverable physical notice packets for the Hyundai Class, which had not

5

previously been provided to the Court. Dkt. No. 156. The Court granted final approval 10 days after receiving this information. Dkt. No. 160.

To the extent Graham's motion is based on his inability to challenge the parties' showing at the fairness hearing, he was aware that the number of undeliverable notice packets to the Hyundai Class was unavailable at the time, but he did not object to final approval on this ground. The undeliverable rate for the Hyundai Class was only slightly higher than the rate for the Kia Class, which had been filed before the settlement hearings, and to which Graham did not object at the time. Further, Graham had 10 days between the filing of the supplemental declarations from the settlement administrators and entry of the final approval order to respond. He chose not to file a request to be heard about the anticipated submission and instead waited until after he received a ruling from this Court to challenge the notice.

Accordingly, Graham has not identified any newly discovered evidence that emerged after the Court granted final approval.

C.

Even if Graham's motion were procedurally proper, the merits of his notice argument do not support reconsideration. Graham argues that the number of undeliverable physical notice packets and lack of attempt to identify the proper addresses for the intended recipients suggest that the notice failed to comport with due process. Graham points out that 8.6% of notice packets mailed to the Hyundai Class and 6.2% of notice packets mailed to the Kia Class were returned as undeliverable.

The parties were required to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To comply with Rule 23 and due process, "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (internal citation omitted). Here, the settlement administrators gave notice to class members through mail, email, and settlement websites—using the methods and the notices approved by the Court in its preliminary approval order. This settlement also received considerable attention in the media, further increasing the likelihood that class members whose

information was unavailable to the administrators would learn of the settlement. Dkt. No. 173 at 6 n.2. Before sending the physical notice packets, the settlement administrators ran the address datasets through the National Change of Address database in an attempt to find class members' most recent addresses. At least as to the Hyundai Class (about which Graham seems particularly concerned), any returned notices were "reviewed against [Defendants'] internal customer records for potentially more current addresses and, where applicable, [were] re-mailed to the updated addresses." Fernandez Decl. ¶ 7.

In support of his argument that the proportion of undeliverable notice packets is impermissibly high, Graham relies on a U.S. Postal Service report finding that only 4.3% of all mail was undeliverable in 2013. Graham's reliance is misplaced. As Plaintiffs point out, the report is approximately a decade old and surveyed a dataset of 158 billion mail pieces, whereas this class action involved mailing 6.9 million notice packets. Graham suggests that notice in this case should be expected to result in a higher delivery rate than the general mail statistics from 2013, but he relies only on speculative assumptions. Nor is such a result intuitive. For example, one might assume that the general mail delivery rate, which includes personal letters from family and friends, is less likely to be misaddressed than mass mailings seeking to reach individuals who purchased vehicles years ago. Absent an apt comparison of data, there is no reason to think that the Postal Service's findings suggest that the notice was inadequate here.

Graham also argues that skip tracing is industry standard for providing class members with notice, but he cites no case suggesting that it is required. Skip tracing "is the process of developing new telephone, address, job or asset information . . . ." *Meyer v. Portfolio Recovery Assocs., Inc.*, 707 F.3d 1036, 1040 n.1 (9th Cir. 2012). While skip tracing may be a useful component of reasonable notice in many cases, it is not required in a settlement of this magnitude. Requiring skip tracing in this context would impose on the parties a requirement more burdensome than providing the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

As the Court noted in the final approval order, the number of undeliverable notices "is to be expected in light of the fact that some Class Vehicles are from model years as early as 2006." Dkt. No. 160 at 4. Obtaining a current physical address for many class members is likely impossible. The settlement administrators' notice efforts—which also included email and website notices that Graham ignores—were reasonably calculated to give class members notice of the settlement and comported with Rule 23 and due process. *See Briceno v. ConAgra*

*Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (noting that Rule 23 does not require actual notice to all class members in all cases because it may be impossible to identify some class members) (internal quotations omitted); *In re Lithium Ion Batteries Antitrust Litig.*, 853 Fed. App'x 56, 59 (9th Cir. 2021) (affirming the adequacy of notice where not all class members received a direct mailing). Graham has not shown that the notice given to class members was inadequate or that the Court should reconsider its final approval because the settlement administrators could have done even more to provide notice to the class.[4]

D.

Graham raises two challenges to the objection process. First, he asserts that he was not given an adequate opportunity to respond to the Court's questions. Second, he argues that he was improperly denied the ability to submit a PowerPoint presentation to the Court.

Graham's first challenge appears to be based on the Court's refusal to allow him to return to a line of questioning that the Court had concluded earlier in the hearing. In attempting to clarify Graham's objection to the free inspection benefit, the Court asked his counsel to identify the consideration for the benefit under the settlement agreement. In fact, the Court asked Graham's counsel to identify the consideration four times. Fairness Hearing Transcript at 10:22-11:3, 11:13-24, 14:19-15:23. Graham's counsel was unable to do so, and the Court moved on. Graham had ample opportunity to present his argument and respond to the Court's questioning, and the Court's decision not to prolong the proceedings to allow him a fifth chance did not deprive Graham of his ability to object to the settlement. *See Yagman v. Garcetti*, 852 F.3d 859, 863–64 (9th Cir. 2017) (noting that the "base requirement" of due process is a meaningful opportunity be heard) (internal citation omitted).

Graham's second challenge refers to his attempt to tender a PowerPoint presentation to the Court at the end of the fairness hearing. Graham did not file the

---

[4] Graham included a declaration from a witness purporting to be a "notice expert" in his reply papers. Dkt. No. 176-2. A court may not consider new evidence submitted in a reply without giving the other party the opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The Court declines to further protract the proceedings in this closed case by inviting the parties to respond to Graham's evidence.

presentation in advance of the hearing, so neither the Court nor the parties had the opportunity to review its contents beforehand. Accordingly, allowing Graham to submit the slides at the conclusion of the hearing would have been improper, at least without allowing the parties to address its contents.[5] And in any event, Graham had sufficient opportunity to file an objection along with any supporting documentation he wished the Court to consider before the fairness hearing, as well as the opportunity to present argument at the hearing. Thus, Graham has identified no error that warrants reconsideration and was not otherwise prejudiced by the Court's refusal to permit him to tender the slides. See *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (noting that a party is not prejudiced by a court's refusal to permit oral argument if it can submit its papers to the court).

E.

Graham also improperly reiterates the arguments made in his objection that (1) the settlement's free inspection provision was misleading since it was not truly free and (2) the conditions for obtaining the free inspection benefit were not adequately disclosed to class members. He raises these arguments as well in suggesting that the Court did not sufficiently "scrutinize" the settlement for collusion. The Court has already considered and rejected these arguments, which continue to be unpersuasive. See L.R. 7-18 ("No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.").

\* \* \*

Graham has failed to identify a material difference in law or fact from that which the Court considered when it granted final approval. Nor has he shown a manifest failure to consider material facts that were available at the time of final

---

[5] Graham has since filed the PowerPoint presentation on the docket twice without seeking or obtaining leave of Court. Dkt. Nos. 169-3, 170-3. The presentation merely duplicates the substance of his objection and points raised at the fairness hearing, albeit in a more inflammatory manner (complete with images of flaming vehicles). Consideration of the PowerPoint presentation would not have altered—and does not now alter—the Court's decision to approve the settlement agreement.

9

approval. Accordingly, Graham has not shown that the Court should reconsider its final approval of the settlement.[6] Fed. R. Civ. P. 60; L.R. 7-18.

### III.

The Court next considers Graham's intervention motion. Dkt. No. 165. Graham first moves for mandatory intervention. An applicant for mandatory intervention must meet four requirements: "(1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties." *Arakari v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). "Failure to satisfy any one of the requirements is fatal to the application." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (internal quotation omitted). Plaintiffs do not challenge Graham's showing on the second and fourth elements but dispute that the application is timely and that Graham's interest cannot be adequately represented absent intervention.

The timeliness of an intervention motion is evaluated by looking to (1) the stage of the proceedings, (2) the prejudice to other parties, and (3) the reason for and length of the delay. *United States v. State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996). These factors do not favor allowing intervention here. First, the Court has granted final approval of a class action settlement and entered judgment. *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (noting that "postjudgment intervention is generally disfavored"). Second, the parties would be prejudiced by reopening and prolonging this litigation, which lasted two years and produced voluminous discovery, as the Court found when granting settlement approval. Third, Graham offers no reason for his delay. Indeed, "a party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Id*. at 1120 (internal citation omitted). At the latest, Graham received notice of litigation against Defendants about defective ABS modules following preliminary approval. He did not

---

[6] Graham also disputes the Court's finding that his objection did not comply with the Court's procedural requirements for objecting. Graham has not demonstrated that the Court erred in finding that his objection did not comply with the proper procedure.

promptly move for intervention at that time. Then, after filing an initial objection in which Graham described himself as a "Proposed Intervenor," Dkt. No. 140, he filed an amended objection that removed his intervention request, Dkt. No. 146. Graham offers no explanation for this about-face. Graham argues that his application is timely because it was made within 14 days of entry of the final approval order of the settlement agreement, but offers no legal support for this argument, which ignores the factors the Ninth Circuit has identified as relevant to a determination of timeliness. Looking to those factors, the motion is clearly untimely and must be denied on that basis.

The motion must also be denied because Graham has not demonstrated that the representation of his interests has been inadequate. Graham fails to identify anything that he would be able to accomplish as an intervenor that he has been unable to accomplish as an objector. Graham argues that the asserted deficiencies in the notice given to class members demonstrate the inadequacy of class counsel's representation. This argument fails for two reasons. First, Graham does not contest that he *did* receive notice, undermining his assertion that his interests were inadequately represented. Second, to the extent deficiencies in notice to other class members is relevant to the question whether Graham's interest has been adequately represented, Graham has not identified meaningful deficiencies in the class notice for the reasons explained above.

Since the intervention motion is untimely and Graham has not demonstrated the inadequacy of Class Counsel's representation as to his interests, the Court denies Graham's mandatory intervention request. Graham alternatively requests permissive intervention under Rule 24(b). As with mandatory intervention, permissive intervention requires a timely motion. Fed. R. Civ. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). As explained above, the motion is untimely, and granting intervention now would unduly delay adjudication of the parties' rights. Accordingly, the Court denies Graham's intervention motion.

IV.

Finally, Graham seeks $205,000 in attorney's fees and a $5,000 service award for himself. Dkt. No. 167. To be entitled to attorney's fees in a non-common fund case, the objector must have "substantially enhanced" the settlement's benefits. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). A "minor procedural change" does not warrant attorneys' fees. *Rodriguez*

11

*v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012). Graham argues that he provided a substantial benefit because of a statement made by defense counsel at the fairness hearing addressing the availability of a free inspection in certain circumstances. Addressing a concern raised by the objector does not mean that the settlement was "substantially enhanced" by the objection. The Court approved the settlement and overruled Graham's objection in its entirety. Graham has identified no benefit (material or otherwise) that his objection obtained for the class, let alone one that qualifies as a substantial enhancement. Moreover, the request for $205,000 in attorneys' fees is also deficient because Graham's counsel failed to submit adequate records to substantiate his request.

Service awards are discretionary and meant to compensate a class representative "for work done on behalf of the class . . . ." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). The Court awarded Plaintiffs service awards based on their documented work in the case. Dkt. No. 160 at 16. Graham neither submitted his own declaration nor otherwise documented any work he performed that benefitted the class. Accordingly, Graham has not demonstrated that he personally has spent any time litigating this matter on behalf of the class that justifies granting him a service award. The Court denies Graham's motion for attorneys' fees and a service award.

V.

For the foregoing reasons, the Court denies Graham's motions for reconsideration, intervention, and attorneys' fees and a service award. Dkt. Nos. 165, 166, 167.

Date: June 14, 2023

                                                      Stanley Blumenfeld, Jr.
                                                      United States District Judge